Ray Anthony **JENNINGS**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–86–252–CR.

Court of Appeals of Texas,
Forth Worth.

April 13, 1988.

Danny D. Burns, Forth Worth, for appellant.

Tim Curry, Criminal Dist. Atty., C. Chris Marshall, Delonia A. Watson, Robert Gill, and David Montague, Asst. Criminal Dist. Attys., Fort Worth, for State.

Before FENDER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

Ray Anthony Jennings, appellant, appeals from a jury conviction of capital murder. *See* TEX.PENAL CODE ANN. sec. 19.03 (Vernon Supp.1988). The jury assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant raises eight points of error on appeal.

We affirm.

On January 4, 1985, Officer Matthews of the Arlington Police Department was dispatched to Possum's grocery store to perform a "welfare check." When he arrived, he discovered the body of Dudley, a store employee, in the storeroom. Dudley had been struck in the back of the head with a pickax which was still embedded in his head.

At trial, the State produced several witnesses who testified that appellant had told them that he planned to rob Possum's, or that he had robbed the store and killed Dudley.

Appellant's first two points of error contend that the trial court erred in excluding the testimony of Freeman. Freeman was the cell mate of co-defendant Givens and appellant. Defense counsel attempted to offer Freeman's testimony for two purposes: (1) to prove Givens had committed the charged offense and not appellant; and (2) to establish appellant never talked about his case to anyone. Appellant claims Freeman's testimony should have been admissible because it was res gestae of the charged offense and it fulfilled the requirements of TEX.R.CRIM.EVID. 803(24). We disagree.

During the time Freeman was a cell mate with co-defendant Givens, he overheard Givens talking on the phone. Givens allegedly said, "that [appellant] didn't want to do it, but that is the way it went down...." This testimony is clearly hearsay. *See* TEX.R.CRIM.EVID. 801(d), and the testimony does not constitute res gestae of the offense.

The offense in question occurred on January 4, 1985. The conversation Freeman refers to allegedly occurred between May and August of 1985. At the very least, five months passed between the offense and the conversation. Moreover, defense counsel failed to establish any facts which would suggest spontaneity. *See Ward v. State,* 657 S.W.2d 133, 135 (Tex.Crim.App. 1983); *Dory v. State,* 646 S.W.2d 648, 650 (Tex.App.—Fort Worth 1983, pet. ref'd, untimely filed).

Additionally, appellant's reliance on TEX.R.CRIM.EVID. 803(24) is without merit. Appellant failed to establish the corroborating circumstances which would demonstrate the trustworthiness of the statement as required by TEX.R.CRIM. EVID. 803(24).

Appellant also wanted to offer certain other testimony of Freeman to establish that appellant never talked to him about his case. Defense counsel claimed Freeman's testimony would refute prior testimony of witnesses who claimed appellant admitted to them that he committed the murder. Appellant's silence would be hearsay if offered for the purpose of proving he did not commit the offense. *Wooley*

*v. State,* 629 S.W.2d 867, 870 (Tex.App.— Austin 1982, pet. ref'd). For the reasons previously stated, appellant failed to establish the silence as res gestae of the charged offense or as being trustworthy. Moreover, whether appellant talked to Freeman while they were cell mates is irrelevant. Freeman's testimony would not establish that appellant did not talk to anyone else, but only that appellant did not talk to Freeman. As a result, the testimony would not make it any less probable that appellant admitted to others that he committed the murder. *See* TEX.R.CRIM.EVID. 401. Accordingly, appellant's points of error one and two are overruled.

■ Appellant's points of error three, four, and five all challenge the trial court excluding the testimony of Franklin, an investigator for the defense. However, we find the trial court had a valid reason for the exclusion of Franklin's testimony, regardless of the cruciality of the contents of his testimony.

Before the State began its case in chief, the defense asked the trial court to invoke "the Rule." *See* TEX.R.CRIM.EVID. 613. The trial court honored the request. When the defense was presenting its case, defense counsel called Franklin to testify. The State objected to any testimony from Franklin because he had been present when several witnesses had earlier testified, thereby violating TEX.R.CRIM.EVID. 613. We also note that the State specifically requested that its investigator be subject to a relaxed version of the rule, but the defense failed to make a similar request for its investigator.

Enforcement of the rule is within the discretion of the trial court. *Green v. State,* 682 S.W.2d 271 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). The trial court's decision will not be reversed unless a clear abuse of discretion is shown. *Id.* Appellant only argues on appeal that the trial court's action deprived appellant of crucial and beneficial testimony, but nowhere does appellant establish an abuse of discretion. Appellant's points of error three, four, and five are overruled.

■ Appellant next asserts that he was deprived of a crucial witness when "an officer of the court counseled a key defense witness not to testify for appellant." Appellant's assertion is misleading.

The defense called Willis as a witness. Willis took the oath, stated his name, and then told the court that he did not wish to testify. The trial court dismissed the jury and heard from Willis's court-appointed attorney, Molina. Molina informed the court that his client did not wish to testify. The trial court instructed Molina to talk to his client about his fifth amendment rights, but Molina replied that he did not know of any fifth amendment right that his client could claim. As a result, the judge requested the jury to be brought back.

Defense counsel proceeded to question Willis. Soon thereafter, Molina interrupted the proceedings and asked to consult with his client. Defense counsel objected to the interruption. Subsequently, Willis was allowed to consult with his attorney and returned to the stand refusing to answer any questions. Another witness was allowed to testify, and then defense counsel called Willis back to the stand. Once again, Molina requested to confer with his client. Thereafter, Willis continued to refuse to answer any questions, although ordered to do so by the trial court.

Willis demonstrated his unwillingness to testify *before* his attorney initially interrupted the proceedings. In turn, Molina, as Willis's attorney, was protecting the rights of his client by interrupting the proceedings. Although the number of requested and granted conferences appear to be unusual, we do not find the trial court's action improper in light of the fact that there was some question as to the witness's own fifth amendment rights. Nor does appellant cite any authority for the trial court's action being improper. Additionally, the trial court did direct Willis to answer the questions proposed by defense counsel. Nevertheless, Willis persisted in refusing to answer. Appellant's sixth point of error is overruled.

Appellant asserts in his last two points of error that the trial court erred in granting the State's challenge for cause with respect to venirewoman Rogers and in denying his challenge to the seating of venireman Stinson.

During the voir dire of Rogers, it was established that she suffered from radiation sickness, arthritis, gout, and high blood pressure. Rogers testified that she had recurring periods when she had to remain in bed because of severe pain and nausea, and when her "spells" occurred she would stay in bed from one to two weeks. She also testified that her arthritis prevented her from sitting for long periods of time without suffering from pain. Finally, Rogers testified that she thought she was unfit for jury service because of her radiation sickness.

The trial court has the responsibility for determining the qualifications of a prospective juror when a challenge is made. *Villarreal v. State,* 576 S.W.2d 51, 63 (Tex. Crim.App.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979); TEX. CODE CRIM.PROC.ANN. art. 35.21 (Vernon 1966). The record is devoid of any abuse of discretion on the part of the trial court in excusing Rogers. *See Villarreal,* 576 S.W.2d at 63; *Redd v. State,* 578 S.W.2d 129 (Tex.Crim.App. [Panel Op.] 1979).

Appellant next claims that the trial court erred in overruling his challenge for cause when venireman Stinson allegedly admitted to a bias against appellant because of appellant's race. The testimony upon which appellant bases his claim is as follows:

BY MR. WILSON [Defense Counsel]:

. . . .

Q. Okay. You notice that the defendant in this case is a black man.

Would that fact affect you in any way in your deliberations on guilt or innocence or on punishment if you get to that point?

A. Not that I'm consciously aware.

. . . .

Q. You worry me a little bit when you say not consciously. You—you seem to be that you recognize that you have mental reservations about that.

A. I am not reflecting so much in my feelings personally, but society in general has had a racial bias for quite some time and it may not be something that I'm totally aware of, but there may be a built-in racial bias that I am not aware of that is just culturally built-in for the last 150 years.

I am not aware that I would discriminate consciously.

Q. But you might?

A. But to rule, you know, to say that it's impossible, I don't think would be totally accurate. It's possible that I might unconsciously. I would try to be as fair as possible.

Q. Okay. It's you're—you're—I think you are trying to be honest with us. You are telling us that you might have a bias or prejudice against this defendant because he's black?

A. That's a possibility. I don't have a conscious prejudice.

Q. Okay. But it's something that you recognize is built into society and built into you, too?

A. Absolutely.

. . . .

BY MR. GILL [Prosecutor]:

Q. Mr. Stinson, I think you said that you have no—you have no conscious prejudice against any particular person or—or against the black race in general; is that correct?

A. That's true. And frankly, I probably have less bias than I would consider the vast majority of the population, really.

Q. Of course, you are—you are looking at this particular defendant in this case. You know nothing about him whatsoever; isn't that true?

A. That's true.

Q. With regard to that, are you perfectly willing and prepared to give him every right or privilege that he's entitled to under the law and under the facts of the case?

A. Personally I feel that I could give him as fair a hearing any other racial group.

Q. Okay. Are you saying that you would give him the same hearing whether he was a black man, a white man, an Asian or whatever he is?

A. Yes, I will do my best.

Q. Are you going to judge the case on the facts of the case and not the race of the defendant?

A. As much—sure.

When bias or prejudice are not established as a matter of law, the trial court has the discretion to determine whether bias or prejudice actually exists to such a degree that the prospective juror is disqualified and should be excused from jury service. *Anderson v. State,* 633 S.W.2d 851, 853–54 (Tex.Crim.App. [Panel Op.] 1982). Bias exists as a matter of law when a venireman admits or demonstrates prejudice toward a racial or ethnic class of which a defendant is a member. *Id.*

Stinson's testimony merely established that Stinson was aware that racial prejudice is built in to our society and may influence him even though he admits to have no conscious prejudice. In light of all the answers Stinson gave, we do not view the trial court's determination that no bias existed as an abuse of discretion. *See Chambers v. State,* 568 S.W.2d 313, 323 (Tex.Crim.App.1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979). Points of error seven and eight are overruled.

The trial court's judgment is affirmed.