Anthony TELL, Appellant,

v.

The STATE of Texas, State.

No. 2–93–525–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 21, 1995.

Rehearing Overruled Nov. 9, 1995.

Peavy & Dara, P.C., and Don E. Peavy, Sr. Fort Worth, Ingrid K. Stamps, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, Helena F. Faulkner, Steve Wells, and James Cook, Assistants Fort Worth, for appellee.

Before CAYCE, C.J., and DAUPHINOT and RICHARDS, JJ.

## OPINION

CAYCE, Chief Justice.

Anthony Tell was convicted by a jury of aggravated robbery with a deadly weapon. The jury found the enhancement paragraph to be "true" and assessed his punishment at confinement for seventy-five years and payment of a $1,000.00 fine. In four points of error, Tell contends: 1) the trial court erred in overruling a motion to suppress his identification in a lineup because he did not have an attorney present and the lineup was improperly suggestive; 2) the trial court erred in submitting instructions to the jury on the law of parties and parole; 3) the trial court improperly excluded the testimony of an expert witness under TEX.R.CRIM.EVID. 613; and 4) the trial court erred in admitting into evidence a ski mask that was taken from Tell's residence without a search warrant. We overrule Tell's points of error and affirm the judgment of the trial court.

Shortly after midnight, on June 27, 1992, three or four African–American men entered a back door of the M & M Steak House in Tarrant County, Texas, while four employees were cleaning up the building and closing out the day's transactions. All but one of the robbers wore ski masks; the unmasked man was armed with a gun. A dishwasher, Monserrat Dozal, was immediately beaten by the robbers. The robbers then ordered the other three employees, Chelsie Prendez, Victoria Perez Grizzard and Sherby Nixon, to lie on the floor. After ordering Nixon to open the cash register, the unmasked gunman took the register drawer. Meanwhile, one of the masked robbers took money Prendez and Grizzard had in their pockets. He also took Grizzard's purse containing $686 in cash.

Three photo spreads were shown to the victims over the next two months by Detective Richard Galloway. None of these photo spreads contained Tell's pictures and none of the witnesses identified any individual in the spreads. In a fourth photo spread including Tell, Prendez identified Tell as the unmasked gunman. However, she told Detective Galloway she would like to see the man in a live lineup to be certain of the identification.

On August 19, 1992, Tell was arrested pursuant to an arrest warrant. He was later identified in a live lineup by Prendez and Grizzard as the unmasked gunman. Nixon identified Tell at trial, but she did not identify anyone as one of the robbers at the lineup.

In his first point of error, Tell contends the trial court erred in overruling his motion to suppress the lineup identifications by Prendez and Grizzard. Tell asserts the lineup identifications were tainted because he was denied his right to counsel in violation of the U.S. and Texas Constitutions. He further contends the lineup was unnecessarily suggestive.

■ Tell's brief contains no argument or authorities addressing the alleged violations of the Texas Constitution. Therefore, he has waived his state constitutional claims. TEX. R.APP.P. 74(f); *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

■ Even if the state constitution complaint had not been waived, this court has previously held that the right to counsel under article I, section 10 of the Texas Constitution does not attach until a "critical stage" of the criminal process is reached. *Price v. State*, 870 S.W.2d 205, 207–08 (Tex.App.— Fort Worth), *aff'd*, 887 S.W.2d 949 (Tex. Crim.App.1994). A "critical stage" is not reached until formal charges are brought against a subject. *McCambridge v. State*, 778 S.W.2d 70, 76 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).

Here, Tell was arrested by warrant on August 19, 1992 and the lineup was conducted on August 21, 1992. At the time of the lineup, Tell had not been arraigned. No formal charges were filed against Tell until August 23, 1992. Thus, no right to counsel existed at the time of the lineup. *Price*, 870 S.W.2d at 207–08.

■ Similarly, the right to counsel under the Sixth Amendment of the U.S. Constitution does not attach until at or after the time judicial proceedings are initiated. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). It is well-settled that a lineup conducted after a defendant's arrest, but before arraignment, indictment, or formal charges, is merely investigatory in nature; therefore, the defendant is not entitled to presence of counsel at such a lineup. *Id.* at 688–91, 92 S.Ct. at 1881–83, 32 L.Ed.2d at 417–18; *Wyatt v. State*, 566 S.W.2d 597, 600 (Tex.Crim.App. [Panel Op.] 1978); *Price*, 870 S.W.2d at 207.

■ At the time of the lineup in this case, no arraignment had occurred and no formal charges had been filed against Tell. Since no judicial proceedings had been initiated, Tell had no right to counsel under the Sixth Amendment of the U.S. Constitution.

■ Tell's contention that he was formally charged when Detective Galloway's arrest warrant affidavit was filed and reviewed for issuance for an arrest warrant is without merit. The sole purpose of the arrest warrant affidavit was to establish probable cause to arrest Tell, *not* to formally charge him. Tell was only a suspect at the time of the lineup. An arrest alone does not trigger adversarial judicial proceedings, with or without a warrant. *Dunn v. State*, 696 S.W.2d 561, 565 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986).

■ In addition, we disagree with Tell's contention that the live lineup was improperly suggestive. The lineup included five other young African–American males, all dressed in identical prison garb. There were some differences in weight, height and complexion of the men, but none of the men differed unreasonably from the descriptions of the unmasked gunman. Furthermore, Tell did not stand out as distinctively different from the other men in the lineup. *See Cooks v. State*, 844 S.W.2d 697, 732 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Ford v. State*, 794 S.W.2d 863, 866 (Tex.App.—El Paso 1990, pet. ref'd). Based on the record before us, we find that the lineup was conducted with fairness and care.

Point of error one is overruled.

■ In his second point of error, Tell contends that the trial court erred in submitting to the jury an instruction on the law of parties. Tell complains that the charge on the law of parties allowed him to be convicted of an offense for which he was not indicted. We disagree.

■ It is well-settled that a trial court may submit a charge on the law of the parties, if it is supported by the evidence, even if there is no such allegation in the indictment. *See Montoya v. State*, 810 S.W.2d 160, 165 (Tex.Crim.App.1989), *cert. denied*, 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991); *Michel v. State*, 834 S.W.2d 64, 67–68 (Tex.App.—Dallas 1992, no pet.); *Moore v. State*, 804 S.W.2d 165, 166 (Tex.App.—Houston [14th Dist.] 1991, no

pet.). The record in this case shows that Tell's acts before, during and after the offense showed that Tell acted with the intent to promote or assist the offense of aggravated robbery by soliciting, encouraging, directing, aiding, or attempting to aid his companions in the commission of the offense. *See* TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994); *Estrada v. State*, 846 S.W.2d 332, 335–36 (Tex.Crim.App.1993) (Baird, J., dissenting).

Specifically, the evidence showed Tell was the unmasked gunman who forced Grizzard, Prendez and Nixon at gunpoint to lie on the floor while his companions looked for "stuff" and knocked things over in another room; Tell ordered Nixon at gunpoint to show him where the money was, while one of his companions took money from Grizzard's and Prendez's pockets; and, Tell took the cash register drawer and fled the scene with the other robbers. Based on this evidence, we hold the trial court did not err in allowing the jury to determine whether Tell was criminally responsible as a party to the aggravated robbery.

■ Tell also argues that the trial court erred in submitting a parole instruction because it purportedly confused the jury and caused the jury to speculate how many calendar years Tell would serve. We find this unsupported conclusion to be without merit.

Article 37.07, section 4(a) of the Texas Code of Criminal Procedure required the trial court to submit the parole charge submitted below. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1995). The jury was charged not to consider how good conduct time or the parole law might be applied to Tell. Nothing in the record indicates that the jury did not follow the trial court's instruction, and this court must presume that it did. *See Boudreaux v. State*, 723 S.W.2d 230, 232 (Tex.App.—Beaumont 1986, no pet.). Point of error two is overruled.

In his third point of error, Tell contends that the trial court erred in excluding the testimony of his investigator, Ralph Williams, for violation of Rule 613 of the Texas Rules of Criminal Evidence ("the Rule"). It is undisputed that the State invoked the Rule three times and that Williams remained in the courtroom during the entire proceedings. At trial, Tell's attorney claimed that Williams was not subject to the Rule because he did not anticipate calling Williams as a witness when the Rule was invoked, and that the necessity of his testimony did not become apparent until after the State rested its case. Tell's attorney asserts that if Williams was under the Rule he was exempt from its application because he was a "defense expert," and that even if Williams's presence in the courtroom violated the Rule, he should have been allowed to testify because his testimony was crucial to the defense.

■ The rule governing the exclusion of "witnesses" is embodied in Rule 613 of the Texas Rules of Criminal Evidence, which provides,

> At the request of a party the court shall order *witnesses* excluded so that they cannot hear the testimony of other *witnesses*, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause, or (4) the victim, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

TEX.R.CRIM.EVID. 613 (emphasis supplied). The Rule serves two purposes: 1) it prevents witnesses from tailoring, consciously or unconsciously, their testimony to fit that of other witnesses; and 2) in the case of witnesses testifying for the same side, it enhances the jury's ability to detect falsehood by exposing inconsistencies in their testimony. *E.g., Ex parte Robertson*, 731 S.W.2d 564, 566 (Tex.Crim.App.1987); *Allen v. State*, 536 S.W.2d 364, 367 (Tex.Crim.App.1976); *Carlile v. State*, 451 S.W.2d 511, 512 (Tex. Crim.App.1970). Generally, the "witnesses" contemplated by the Rule are those whom a party anticipates calling to testify. *See Beasley v. State*, 810 S.W.2d 838, 842–43 (Tex. App.—Fort Worth 1991, pet. ref'd).

Prior to the promulgation of our Criminal Rules of Evidence, the determination of whether witnesses were excluded when a party invoked the Rule was discretionary with the judge. *Moore v. State,* 882 S.W.2d 844, 848 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *see* TEX.CODE CRIM.PROC. ANN. arts. 36.03–.06 (Vernon 1981) (articles 36.03–.04 were repealed by Act effective Aug. 26, 1985, 69th Leg., R.S., ch. 685, § 9(b), 1985 Tex.Gen.Laws 2472, 2474); *Green v. State,* 682 S.W.2d 271, 294 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). The Rule is no longer discretionary with the trial court. By the Rule's own terms, the court shall order the witnesses excluded at the request of a party or on its own motion. TEX.R.CRIM.EVID. 613; *Moore,* 882 S.W.2d at 848. The party seeking an exception under the Rule now has the burden of showing that one of the enumerated exemptions is met. *Moore,* 882 S.W.2d at 848; *Kelley v. State,* 817 S.W.2d 168, 172 (Tex.App.—Austin 1991, pet. ref'd).

The Rule contains no express exemption for expert witnesses or investigators. TEX.R.CRIM.EVID. 613. As other witnesses, the party seeking an exemption for an expert witness, or an investigator who is expected to testify as a witness, must make a "showing" that the witness falls under one of the express exceptions to the Rule. *See Moore,* 882 S.W.2d at 848 (error to permit expert witnesses to remain in courtroom during trial absent proof that an exception applied); *Jennings v. State,* 748 S.W.2d 606, 609 (Tex.App.—Fort Worth 1988, pet. ref'd) (trial court did not abuse its discretion in excluding testimony of investigator where party failed to request that investigator be allowed to remain in courtroom under relaxed version of Rule).

As a sanction for violation of the Rule the trial court may, among other things, refuse to allow a witness to testify. *Mitchell v. State,* 608 S.W.2d 226, 228 (Tex.Crim.App. [Panel Op.] 1980); *Jennings,* 748 S.W.2d at 609. However, disqualification of a defense witness for violation of the Rule must be viewed in light of the defendant's constitutional right to call witnesses on his behalf.

*Davis v. State,* 872 S.W.2d 743, 745 (Tex. Crim.App.1994). Generally, a defense witness cannot be excluded solely for violation of the Rule, although the right to exclude under "particular circumstances" is within the sound discretion of the trial court. *Id.; Webb v. State,* 766 S.W.2d 236, 241 (Tex. Crim.App.1989). In determining whether to disqualify a witness under the Rule, the trial court must balance the interest of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Webb,* 766 S.W.2d at 244.

> Where the "particular and extraordinary circumstances" show neither the defendant nor his counsel have consented, procured, connived or have knowledge of a witness or potential witness who is in violation of the sequestration rule, and the testimony of the witness is crucial to the defense, it is an·abuse of discretion exercised by the trial court to disqualify the witness.

*Id.* Thus, in reviewing whether a trial court abuses its discretion in disqualifying a witness, the appellate court must determine: 1) whether there are particular circumstances, other than the mere fact that the Rule was violated, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the context of that witness's testimony; and 2) if no particular circumstances existed to justify the disqualification, whether the excluded testimony is crucial to the defense. *E.g., Davis,* 872 S.W.2d at 746; *Webb,* 766 S.W.2d at 245; *Green,* 682 S.W.2d at 294.

Although Tell labeled Williams as an "expert" in both the trial court and in this appeal, the record clearly reflects that Williams was *not* called as an expert. Rather, he was called as a rebuttal witness to impeach Nixon's testimony that she recognized Tell at a pretrial lineup. Nixon was the last witness called by the State. She testified that she recognized Tell and another man in the second lineup, but that she did not identify either as the robber because the police had instructed her to identify only one

person. Williams interviewed Nixon shortly after the lineup, and, according to Williams, Nixon said she recognized two men other than Tell.

During his cross-examination of Nixon, Tell's attorney identified Williams and asked Nixon if she recalled telling Williams that she recognized two men other than Tell. Nixon denied Williams's version of the conversation and repudiated her signed lineup form where she failed to identify any subject.

The Rule having been invoked in this case, it was incumbent upon Tell's attorney to see to it that all of the witnesses he anticipated using during trial remain sequestered, or prove that they were exempted from the Rule. However, during the time the Rule was invoked by the State, there is no evidence that Tell's attorney anticipated using Williams as a witness. Although he knew Williams had a conversation with Nixon about her failure to identify Tell in the lineup, and the potential for conflict between Williams's and Nixon's versions of the conversation, there is nothing in the record showing that Tell's attorney knew that Nixon would actually dispute Williams's version of the conversation. It did not become apparent that Williams would be needed as a rebuttal witness until after Nixon denied telling Williams that she recognized two men other than Tell. This occurred only moments before the State rested its case and Tell attempted to call Williams to the stand as a rebuttal witness.

Tell also intended to use Williams to relate his unsuccessful attempts to locate and serve subpoenas on two witnesses which Tell contends would have testified on his behalf. However, Tell's attorney did not know Williams would be needed to testify to defense efforts to secure the witnesses until the break in the proceedings after the State rested. In the bill of exception, Williams said he first learned the witnesses could not be secured approximately "15 minutes" before the State rested its case.

Under these narrow set of circumstances, we find that Tell's attorney did not have ample notice that Williams's testimony would be necessary during trial, nor ample opportunity to prove Williams was exempted from

the Rule until after the State rested its case and the defense called Williams as a witness. We hold that, *under the particular facts of this case*, Williams's presence in the courtroom during the State's case did not violate the Rule because Tell's attorney did not contemplate using Williams as a "witness" when the Rule was invoked and Williams was not connected with the defense's case in chief, but only became a necessary witness due to events occurring at or near the conclusion of the State's case. Since there is no evidence that Tell's attorney actually anticipated using Williams as a "witness" while the Rule was in effect, Williams was not under the Rule. We, therefore, hold that the trial court abused its discretion in disqualifying Williams for violating the Rule under the facts of this case.

■ Even if Williams was subject to the Rule and it was incumbent upon Tell's attorney to prove that Williams was exempted from the Rule, we hold that this burden was met. Tell's attorney sought to exempt Williams from the Rule under the third exception of Rule 613. This exception requires the exercise of sound judicial discretion. *Kelley*, 817 S.W.2d at 171–72. Any person whose presence is "essential" to the presentation of a party's case cannot be excluded. TEX.R.CRIM.EVID. 613.

In response to the State's objection to Williams's testimony, Tell's attorney explained that Williams's presence was needed for the following reasons:

> Mr. Williams is our expert investigator. We could not communicate with him if he is sequestered down the hall somewhere in a witness room. He is part of the defense and we need to be able to communicate with him at a moment's notice.

It was further established through Williams's testimony that the defense relied on Williams's investigation in preparing Tell's defense. We also infer from the trial court's order granting Tell's pretrial motion for an investigator that Williams's services were necessary to Tell's overall representation. Based on these facts and inferences, we find that there was sufficient evidence before the court to support a finding that Williams was

exempt from the Rule on the grounds that he was essential to the presentation of Tell's defense at trial.

In view of our finding that the trial court abused its discretion in disqualifying Williams on the basis that his presence in the courtroom violated the Rule, we must now determine whether the error is reversible. TEX.R.APP.P. 81(b)(2); *see Hernandez v. State*, 791 S.W.2d 301, 306 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Barnhill v. State*, 779 S.W.2d 890, 892–93 (Tex.App.—Corpus Christi 1989, no pet.). We find the trial court's error harmless because Williams's testimony was not crucial to the defense.

Williams's testimony regarding his conversation with Nixon merely corroborated Nixon's assertion that she equivocated at the lineup and failed to identify any of the subjects as one of the robbers. Not only did Nixon explain this failure, but she identified Tell in court. Moreover, Williams's version of his conversation with Nixon would only have discredited *Nixon's* identification of Tell; his testimony had no bearing on the wholly independent and unimpeached identifications made by Prendez and Grizzard. We have already held that these identifications were valid and sufficient to establish that Tell was one of the robbers.

Tell has also failed to demonstrate the relevance of Williams's testimony regarding defense efforts to secure the presence of the two additional witnesses. Tell's attorney urged that the testimony was necessary to counter contemplated remarks by the State during closing argument which Tell's attorney was concerned would raise a question in the jury's mind regarding Tell's failure to call the witnesses to testify. However, the State did not mention the witnesses during its closing, nor did Tell. Therefore, it never became necessary to use Williams to show that the defense made an attempt to locate the missing witnesses.

For the foregoing reasons, we find that although the trial court did abuse its discretion in disqualifying Williams for violation of the Rule, the error was harmless. Accordingly, Tell's third point of error is overruled.

In his fourth and final point of error, Tell complains that the ski mask and the testimony of Officer Clay Bounds were inadmissible because the officer seized the ski mask from Tell's residence without a search warrant or consent. During the State's case in chief, Officer Bounds testified that while looking for Tell inside his residence, Officer Bounds confiscated the ski mask on a dresser inside Tell's bedroom.

Q. [Prosecutor] ... And did you go up to the residence?

A. [Officer Bounds] Yes, sir.

Q. Okay. Did you—well, tell us what happened.

A. Okay. We went out to the arrest—to the residence, myself and Officer Barber and a rooky [sic] that was with him. We knocked on the front door of the residence which was answered by an older black female. We advised her that we were there to attempt service on a warrant. We went inside the residence, attempted to locate the subject, but was unable to locate him at that time. But while inside the residence, we did confiscate a ski mask that was placed—tagged and placed in the property room. He was arrested at the residence approximately an hour later when he showed back up to the residence.

Q. Okay. Let's back up a little bit. Who was the person who seized the ski mask?

A. I was.

Q. Okay. And where was that located in the house?

A. It was inside the residence. It was a dresser that was inside the bedroom, but was right next to the living room area.

[Defense Counsel]: Your Honor, we object to this line of questioning. May we approach?

The State contends Tell's objection was untimely.[1] We agree.

---

1. Tell also filed no motion to suppress and made *no attempt to exclude either the ski mask or* Officer Bounds's testimony through motion in limine.

It is now axiomatic that in order to preserve an error in the admission of evidence for appellate review, a defendant must make a timely objection. *Sattiewhite v. State,* 786 S.W.2d 271, 283 (Tex.Cr.App. 1989); *Thompson v. State,* 691 S.W.2d 627, 635 (Tex.Cr.App.1984), *and,* Tex.R.App.P. 52(a). An objection is timely if it is raised as soon as the ground of objection becomes apparent, *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Cr.App.1990), *and, Polk v. State,* 729 S.W.2d 749, 753 (Tex.Cr.App. 1987), that is, "as soon as the defense knows or should know *that an error has occurred."* *Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Cr.App.1991).

*Johnson v. State,* 878 S.W.2d 164, 167 (Tex. Crim.App.1994); *see Juhasz v. State,* 827 S.W.2d 397, 400–01 (Tex.App.—Corpus Christi 1992, pet. ref'd). Because Tell failed to object at the time the ski mask was mentioned and allowed further questions and answers before finally objecting, Tell has waived any error in the admission of the ski mask and Officer Bounds's testimony concerning it. Point of error four is overruled.

Having overruled all of Tell's points of error, we affirm the trial court's judgment.