NO. 07-02-0462-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 20, 2003

_____

JOSEPH KALKA,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 159TH DISTRICT COURT OF ANGELINA COUNTY;

NO. 22,630; HON. PAUL E. WHITE, PRESIDING

_____

***OPINION***

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Appellant Joseph Kalka appeals his conviction on two counts of aggravated sexual assault.[2] Through four issues, he contends that 1) the trial court erred in overruling his objection to evidence of an extraneous bad act, 2) the trial court erred in overruling his

_____

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

[2] Appellant was convicted of the penetration of both the anus and the female sexual organ of the victim without her consent.

objection to the admission of hearsay evidence, and 3) the evidence was legally and factually insufficient to support the conviction. We affirm the judgment.

### Issue One - Extraneous Offense

In his first issue, appellant asserts that the trial court erred in overruling his objection to testimony by Cathlena (the victim) that appellant had previously propositioned her to have sex with him. We overrule the issue.

The allegedly improper testimony came into evidence during the following exchange:

Prosecutor: . . . [D]id you know the Defendant, Mr. Kalka, before that date?

Witness: Yes. He stopped me on the road a couple times.

Prosecutor: What did he ask you when he stopped you on the road?

Witness: "Come have sex with me."

Prosecutor: And did you ever go with him?

Witness: No.

Prosecutor: How many times do you think he stopped you on the road?

Witness: Ten - - five times or ten.

Prosecutor: Five or ten times?

Witness: Uh-huh.

Prosecutor: When he would stop you, would you be - -

Defendant: Your Honor, I'm going to object at this point. This is - - I'm [sic] mean, I'm going to object first off on the grounds of relevance and, second, it violates the 404(b) notice. We did not get any notice they were going to try to bring in other such acts, and I'll just sort of leave my objection there.

As can be seen, appellant's objection was not uttered until the prosecutor asked and the witness answered several questions involving appellant's prior effort at propositioning the

2

witness. By then, the jury had heard her state that appellant invited her to have sex with him and had stopped her on the road a number of times. Under these circumstances, the purported error was waived. *See Jones v. State,* 111 S.W.3d 600, 604 (Tex. App.–Dallas 2003, no pet. h.) (holding that error is waived if the objection is made after the State has elicited the improper testimony and no legitimate reason is offered for the failure to timely object); *Tell v. State*, 908 S.W.2d 535, 543-44 (Tex. App.–Fort Worth 1995, no pet.) (holding that the objection was waived because it was not asserted immediately after the purportedly inadmissible testimony was mentioned).

### *Issue Two – Hearsay*

In his second issue, appellant complains about the reiteration by Officer Bonnie Grimes of "the nature of what Cathlena reported to" her when Grimes was performing her investigation. Same was allegedly hearsay. We overrule the issue.

The following is the exchange during which the allegedly objectionable matter arose:

Prosecutor: What was the nature of what Cathlena reported to you?

Defense: Anything that's going to come out is going to be hearsay.

Court: Well counsel, approach. I'm not - - until I've heard the response, I don't know if I can rule on that one.

(At the Bench, off the record.)

Court: Ms. Armstrong, I'm going to overrule the objection, but since I caused this interruption, you may restate the question.

Prosecutor: What was the nature of the crime Ms. Armstrong reported to you?

Witness: That she had been sexually assaulted.

3

As can be seen, at the time appellant uttered his objection, the witness had yet to answer the question. Furthermore, it is reasonably conceivable that any answer forthcoming may or may not have contained hearsay since the question posed inquired into the "*nature* of what Cathlena reported." (Emphasis added). For instance, the witness simply could have said something like "Cathlena described to me what happened"; that would not have been hearsay. In other words, from the structure of the question asked, the trial court could not necessarily conclude that the only or probable answer forthcoming would contain inadmissible evidence, and it said as much when it told counsel that it could not determine if it was hearsay until it heard the response. Thus, we conclude that the trial court did not abuse its discretion when it overruled appellant's objection. Nor do we conclude that appellant preserved his complaint to the answer eventually given by the witness after further questioning because he did not object at that time.

### Issues Three and Four - Legal and Factual Sufficiency

In his next and final two issues, appellant argues that the evidence is legally and factually insufficient to support his convictions. We overrule them as well.

a. *Standard of Review*

The applicable standards of review are well-settled and fully discussed in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), *Sims v. State,* 99 S.W.3d 600 (Tex. Crim. App. 2003), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000). We refer the litigants to those opinions.

b. *Application of Standard*

4

The record before us illustrates that on November 6, 2001, Cathlena was walking home to her parent's house around 6:00 p.m. Though 19 years old, she had the mental capacity of a six or seven-year-old child. While on her way home, she passed by a trailer. Three men were in front of it drinking beer. One of the men, Ira Cartwright, was someone she had known for most of her life, and he called her over to join them.[3] By that time, Cathlena already had several glasses of wine given to her by a man whose yard she helped clean. More alcohol was given to her at the trailer. The group was joined by appellant who lived next door.

At some time, the four men and Cathlena went into the trailer. Ira told her to go into the back bedroom and remove her clothes. She did so because she was afraid he would rip them off, as he allegedly had done once before. While in the bedroom, he forced Cathlena to perform oral sex on him and then raped her vaginally. Before Cathlena had put her clothes back on, appellant entered the room naked, pushed her back on the bed, and raped her both vaginally and anally. The girl said she struggled, screamed, and told appellant to stop.[4] When he finished, she dressed and passed out in the living room.

The next morning, Cathlena awoke in blood and feces from rectal incontinence. Five days lapsed before she told a friend of the incident. The friend reported it to the authorities. At that time, Cathlena was taken to a hospital where multiple bruises were discovered. The bruises were six or seven days old and appeared to be caused by

---

[3]Cathlena testified that Ira had forced her to have sexual relations with him on one previous occasion and that she was afraid not to join him when he called her name. Ira testified that Cathlena was the one who called to him and sought to join the group.

[4]Ira conceded he had sexual relations with Cathlena, but contended they were consensual. Appellant also relied on a defense of consent.

5

someone's fingers. Also discovered were a knot on her head and severe lacerations to her anus. The latter caused her to suffer bleeding, severe pain, fecal incontinence, and difficulty in walking. Furthermore, these injuries were consistent with non-consensual anal sex, according to a witness.

The foregoing constitutes some evidence upon which a rational jury could conclude, beyond reasonable doubt, that appellant 1) intentionally or knowingly penetrated Cathlena's anus or female sexual organ without her consent, and 2) caused her to suffer serious bodily injury while doing so. That is enough to warrant conviction for aggravated sexual assault. *See* TEX. PEN. CODE ANN. §22.021(a) (Vernon 2003) (stating that one commits aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person without that person's consent and causes serious bodily injury in the course of that criminal episode).

Appellant would disagree with our conclusion because, in his estimation, Cathlena's mental condition rendered her testimony "extremely suspicious" and "inherently untrustworthy." Thus, "no rational trier of fact could [purportedly] base a conviction" on it. Yet, he cites no authority to support the proposition that the testimony of those having mental limitations akin to Cathlena's is unbelievable and, consequently, without weight. This may be so because mental retardation does not make the recollections of its victims "inherently untrustworthy"; rather, it simply affects the weight a juror may assign to their testimony. *Allen v. State*, 479 S.W.2d 278, 280 (Tex. Crim. App. 1972) (holding that mental retardation affects the weight of the evidence not its admissibility). So, the girl's testimony at bar was not legally incompetent, and the jurors were free to consider it if they so chose.

6

Nor do we hold that Cathlena's mental status and inconsistent statements rendered the verdict clearly wrong or manifestly unjust. Again, the jury was free to assign to her testimony whatever weight it cared to. So too was it free to consider the affect her inconsistencies had on her credibility. More importantly, her testimony and its inconsistencies was not the only evidence before the jury. The latter was also informed of the trauma inflicted upon Cathlena's body and its consistency with a non-consensual attack. Appellant says nothing about this evidence or how it bolsters Cathlena's recollection of the event. Instead, he focuses on her mental limitation and "lack of mastery over a simple word of the English language" to argue that a "miscarriage of justice" occurred. That she may have had the mind of a six year old, that her testimony may have been inconsistent at times, and that she could not say the word "confused," does not strip the verdict of either legally or factually sufficient evidentiary support given the entirety of the evidence and the jury's right to weigh it and assess the credibility of those testifying.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Justice

Do not publish.

7