COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-016-CR

 

 

WILLIS DONALD DUNCAN                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 1 TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








The trial court revoked
Appellant Willis Donald Duncan=s community supervision and sentenced him to ten years= confinement after finding true the State=s allegations that he violated two conditions of his community
supervision.  In a single point, Duncan
argues that the trial court abused its discretion by prohibiting two defense
witnesses from testifying at the revocation hearing due to their violation of Athe Rule.@[2]  We affirm.

On September 3, 2003, Duncan
pleaded guilty to the offense of driving while intoxicatedCfelony repetition.  The trial
court sentenced Duncan to ten years= confinement, but suspended imposition of the sentence and ordered
that he be placed on community supervision for ten years.  On October 24, 2005, the State filed its
first amended petition for revocation of Duncan=s suspended sentence, which alleged that Duncan violated the terms and
conditions of his community supervision by consuming alcohol and by kicking
Dante Redic, his girlfriend, thereby causing bodily injury to her.  At the hearing, Duncan pleaded not true to
the State=s
allegations that he violated the conditions of his community supervision, and
the Rule was invoked before the State proceeded with its case. 

Duncan testified after the
State had rested, and his attorney indicated that he planned to call a few of
Duncan=s family members Aas to sentencing.@ Before the witnesses were called, however, the trial court informed
the parties that there were two defense witnesses in the hallway outside of the
courtroom who had been talking to two witnesses who had just testified for the
State, Dante and her sister Kenesha.  The
following exchange took place:








The
Court: Go ahead.  Let me tell you that
the bailiff has told me that your witnesses were in the hallway talking to two
witnesses who testified for the State. 
The State=s witnesses
were released and your witnesses were not so. . . I mean, I advised
everybody.  They were all sitting
here.  And I did release those two women,
but they were out in the hallway standing right in front of your group sitting
on the bench telling them the whole - - because the bailiff heard them.

 

[Duncan=s counsel]: Then we won=t call them.

The Court: Do you need to go
tell them why?

[Duncan=s
counsel]: I probably need to.  Just on
one issue, the alcohol, that doesn=t have anything to do with
it. 

 

The trial court then allowed
Duncan=s father, Joe Duncan, Sr., to testify briefly as to what transpired
outside of the courtroom.  He denied
discussing Dante=s and
Kenesha=s testimony with them in the hallway. 
It came to the court=s attention, however, that Mrs. Duncan, the other defense witness, had
attempted to listen to Duncan, Sr. testify by standing in the courtroom=s foyer.  The trial court
questioned the bailiff, Mr. Wilcox, regarding his knowledge of the events, and
the following exchange took place:

The
Court: Mr. Jack - - Mr. Wilcox, what did you advise the Court?  More than that, just tell us what you
saw.  What did you observe?

 

The
Baliff: When I came off the elevator, Judge, they were sitting across from
them.  They were discussing - -

 

The Court: They, who, were
sitting across from them?  Who?

The
Bailiff: The two witnesses that were released from the rule [Dante and
Kenesha].

 








The Court: Yes.

The
Bailiff: Were sitting across from the defense=s
witnesses.  They stopped talking when I
came up there.  So I stood at the door a
few minutes later and heard - - I don=t know which one was saying
which, but I heard them talking about their testimony, about him coming into
the house and such in the hallway, Judge.

 

The Court: Was Mr. Duncan,
Sr. sitting out there?

The
Bailiff: Yes.  They were all sitting
across from them when I walked in, Judge.

 

The
Court: And Mrs. Duncan, I guess it was, that came in a few minutes ago?

 

The Bailiff: Yes, Judge.

The
Court: And did you tell her - - was she told to go to the hallway?

 

The Bailiff: Yes, Judge.

The
Court: And while Mr. Duncan, Sr. was talking, who was it that tried to come
back in the courtroom?

 

The Bailiff: Her, Judge.

The Court: Was she in the
foyer?

The Bailiff: Yes, Judge.

The
Court: Which I understand the foyer - - I don=t
stand in the foyer - - but it=s not soundproof, is it?

 

The Bailiff: No, Judge.








The
Court: So, the Court finds that the testimony will not be allowed for violation
of the rule, and especially with Mrs. Duncan. 
That just shows the level that she=d come back in after being
told to leave so that she could hear what Mr. Duncan was saying.  This is not appropriate, and it won=t be
allowed in this court.  You may step
outside.

 

[Duncan=s counsel]: That=s all we
have your Honor.

The Court: Did you have any
additional witnesses?

[Duncan=s counsel]: No, Your Honor, we do not. 


Duncan then rested and closed.  The
trial court found that Duncan had violated both conditions of his community
supervision, as alleged by the State, and sentenced him to ten years= confinement. 








Texas Rule of Evidence 614,
commonly referred to as Athe Rule,@ provides that at the request of a party, the court shall order
witnesses excluded so that they cannot hear the testimony of other
witnesses.  Tex. R. Evid. 614; see also Tex. Code Crim. Proc. Ann. art. 36.06 (Vernon Supp. 2006)
(stating that witnesses, when placed under rule, shall be instructed by the
court that they are not to converse with each other or with any other person
about the case, except when permitted by the court).[3]  The Rule is designed to prevent witnesses
from altering their testimony, consciously or not, based on other witnesses= testimony.  Routier v.
State, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003); Webb v. State,
766 S.W.2d 236, 239 (Tex. Crim. App. 1989). 
When the Rule is invoked, a witness should not hear testimony in the
case or talk to any other person about the case without the court=s permission.  Minor v. State,
91 S.W.3d 824, 829 (Tex. App.CFort Worth 2002, pet. ref=d).








We review the trial court=s decision to exclude a witness=s testimony for an abuse of discretion.  Taylor v. State, 173 S.W.3d 851, 853
(Tex. App.CTexarkana
2005, no pet.).  In determining whether
to disqualify a witness under the Rule, the trial court must balance the
interests of the State and the accused, consider alternative sanctions, and
consider the benefit and detriment arising from a disqualification in light of
the nature and weight of the testimony to be offered.  Webb, 766 S.W.2d at 244; Tell v.
State, 908 S.W.2d 535, 541 (Tex. App.CFort Worth 1995, no pet.).  The
disqualification of a defense witness must be considered in the context of the
defendant=s
constitutional right to call witnesses on his behalf.  Longoria v. State, 148 S.W.3d 657, 660
(Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).  Finally, in determining
whether the trial court properly exercised its discretion in disqualifying a
witness, the appellate court must determine: 
(1) whether there are particular circumstances, other than the mere fact
that the Rule was violated, which would tend to show the defendant or his
counsel consented, procured, or otherwise had knowledge of a witness who was in
violation of the Rule; and (2) if no particularized circumstances existed to
justify the disqualification, whether the excluded testimony is crucial to the
defense.  Webb, 766 S.W.2d at 245;
Tell, 908 S.W.2d at 541.  The
appellant has the burden of establishing both prongs.  Webb, 766 S.W.2d at 246.








The State concedes that there
were no particularized circumstances to justify the defense witnesses= disqualification pursuant to the first Webb prong.  See id. at 245; Tell, 908
S.W.2d at 541.  Under the second Webb prong,
Duncan argues that the testimony of the disqualified witnesses was crucial to
his defense because Duncan had no other witnesses to testify on his behalf
other than himself and because the fact-finder had no character evidence before
it that would have Ahumanized@ Duncan and offset the State=s punishment recommendation. 
The record, however, demonstrates that Duncan did not assert any type of
objection or complaint in response to the trial court=s decision to disqualify the two defense witnesses.  See Tex.
R. App. P. 33.1(a)(1)(A).  His
counsel merely stated, AThen we won=t call them.@[4]  Moreover, to preserve error on
appeal, the proponent of excluded evidence must make an offer of proof or a
bill of exceptions.  See Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2; Guidry v.
State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).  The party complaining on appeal about a trial
court=s admission, exclusion, or suppression of evidence must, at the
earliest opportunity, have done everything necessary to bring to the judge=s attention the evidence rule or statute in question and its precise
and proper application to the evidence in question.  Reyna v. State, 168 S.W.3d 173, 177
(Tex. Crim. App. 2005).  Without
speculating, we have no idea what the disqualified witnesses= testimony would have been and no way to determine whether it was
crucial to his defense because Duncan never made an offer of proof or bill of
exception.  Absent a showing of what the
testimony would have been, or an offer of a statement concerning what the
excluded evidence would show, nothing is preserved for review.  See Guidry, 9 S.W.3d at 153.[5]  Accordingly, we hold that Duncan has not preserved
his point for appellate review, and we overrule it.  We affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
 August 31, 2006











[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. Evid. 614.





[3]None
of the Rule=s
exceptions are applicable here.  See Tex. R. Evid. 614.





[4]Duncan
was represented by different counsel at trial and on appeal.





[5]Duncan
filed a motion for new trial in which he requested that the trial court Alisten
to additional testimony@
because the testimony of the disqualified witnesses Amay
have influence[d] the trier of fact, the Court, to review the totality of the
circumstances and determine that the allegations by the alleged victim and her
sister were untrue and unfounded.@  The mere filing of this motion for new trial
was also not sufficient to preserve error because it does not identify the
substance of the disqualified witnesses= testimony with any
specificity.