John Leon PRICE, Appellant,

v.

The STATE of Texas, State.

No. 2–92–376–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 9, 1994.

Discretionary Review Granted May 18, 1994.

David L. Richards, David Chapman, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section, Mark Yokom, Asst. Crim. Dist. Atty., Fort Worth, for State.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, John Leon Price, was convicted by a jury of the offense of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.1994). The State waived the death penalty, so that the punishment of confinement for life in the Institutional Division of the Texas Department of Criminal Justice was automatic. On appeal Price raises six points of error contending that the trial court erred: (1)–(2) in permitting the jurors to take written notes during the course of the trial, and in allowing the jurors to rely on those notes during their deliberation at the guilt/innocence stage; (3) by overruling Price's objection to his identification, because he was deprived of his right to counsel under the Texas Constitution at his lineup; (4) in permitting the State to introduce a videotape taken at the crime scene by the police; (5) in permitting the State to introduce post-mortem photographs of the victim taken at the autopsy; and (6) in preventing defense counsel from making a jury argument that it is common knowledge that the black population of Tarrant County is not uniformly diverse throughout the County.

We affirm.

On September 7, 1991, Crosby O'Neal and Donald Ray Fuller were working at O'Neal's store on East Rosedale Street in Tarrant County. At about 1:00 a.m., a man later identified as the appellant, John Leon Price,

entered the store and put a black-handled knife to the back of Mr. Fuller and demanded money. O'Neal pleaded with Price, "don't hurt nobody. I'm going to give you the money." As Price reached for the money, he and O'Neal began to struggle, and Fuller ran to call the police. O'Neal managed to knock the first knife from Price's hand, but was stabbed and killed when Price pulled a second yellow-handled knife. When Fuller came back into the store after calling the police, he found O'Neal bleeding to death in the store. As this was happening, Angela Dennis was with some friends that stopped at O'Neal's for a drink. The driver of the vehicle went into the store for a moment and returned saying that a man was being stabbed. Dennis then saw Price exit the store wearing a blue work shirt and dark pants. The police later recovered the two knives from the murder scene, and both were identified by Fuller. Human blood was found on both of the knifes. Officer Fitchett testified that he saw Price on three separate occasions on the night of the murder walking in the area of O'Neal's store. Later the same morning police searched Price's bedroom and confiscated a blue work shirt with blood stains matching O'Neal's blood. Price's identification card was found in a pair of dark pants. Price's wife, Venessa Diggs, identified the pants as belonging to Price. On September 8, 1991, Price was arrested. Blood stains were found on his watch and one of his boots. Venessa Diggs identified the yellow-handled knife as belonging to Price.

In his first two points of error, Price contends that the trial court erred in permitting the jurors to take written notes during the course of the trial, and in allowing the jurors to rely on those notes during their deliberation at the guilt/innocence stage of the trial. Price admits this court's previous opinion in *Hubbard v. State,* 809 S.W.2d 316, 320–21 (Tex.App.—Fort Worth 1991, pet. granted), provides authority supporting the trial court's decision to permit jurors to take written notes and use those notes during deliberations. Price further argues that "[i]n our case, while admittedly no harm is shown, the potential for harm is so great that it cannot be concluded, beyond a reasonable doubt, the error did not harm appellant." The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP.P. 50(d). We know of no Texas court that found reversible error in simply allowing jurors to take notes during the trial. *See Hollins v. State,* 571 S.W.2d 873, 881 (Tex.Crim.App.1978); *Williams v. State,* 814 S.W.2d 163, 164–66 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *Davis v. Huey,* 608 S.W.2d 944, 955 (Tex.Civ.App.—Austin 1980), *rev'd on other grounds,* 620 S.W.2d 561 (Tex.1981); *English v. American & Foreign Ins. Co.,* 529 S.W.2d 810, 813 (Tex.Civ.App.—Texarkana 1975, no writ); *Manges v. Willoughby,* 505 S.W.2d 379, 384 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.); *Guest v. American Petrofina Co.,* 485 S.W.2d 926, 927 (Tex.Civ. App.—Texarkana 1972, no writ). Nowhere in the record is there any showing that the jurors actually used their notebooks during deliberations. As we stated in *Hubbard,* it is incumbent upon appellant to do this to show harm. Points of error one and two are overruled.

In his third point of error, Price complains that the trial court erred by overruling Price's objection to his identification, because he was deprived of his right to counsel at his line-up, in violation of his rights under the Texas Constitution. The right to counsel under article I, § 10 of the Texas Constitution does not attach until a "critical stage" of the criminal process is reached. *McCambridge v. State,* 778 S.W.2d 70, 76 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990). A "critical stage" is not reached until formal charges are brought against a subject. *Id.; Rudd v. State,* 616 S.W.2d 623, 624 (Tex. Crim.App. [Panel Op.] 1981). Here, Price was arrested by warrant on September 8, 1991 and the line-up was conducted on September 9, 1991. At the time of the line-up, Price had not been arraigned and no formal charges had been filed. Thus, no right to counsel existed at the time of the line-up, and the testimony of Donald Fuller and Angela Dennis was properly allowed. In addition, it is apparent that the in-court identification of Price by these two witnesses was indepen-

dent of the line-up identification. If an in-court identification is of independent origin and based on observations at the time the crime was committed, no violation of due process will be found. *Garcia v. State*, 626 S.W.2d 46, 53 (Tex.Crim.App.1981). Fuller observed the attack on the victim in a well-lighted store, and he testified that he got a good look at Price and would recognize him again. Dennis also testified that she got a very good look at Price under well-lit conditions. The line-up, even if improperly done, did not taint the later in-court identification by the two witnesses. Point of error three is overruled.

▬▬ In his fourth and fifth points of error, Price contends that the trial court erred in permitting the State to introduce a videotape taken at the crime scene by the police, and in permitting the State to introduce post-mortem photographs of the victim taken at the autopsy. The rules applicable to the admission of still photographs also apply to silent motion pictures. *Gordon v. State*, 784 S.W.2d 410, 412 (Tex.Crim.App.1990). Such evidence may be admitted into evidence where it is properly authenticated, relevant to the issues, and not violative of the rules established for the admissibility of photographs. *Id.* The admissibility of photographic material which is alleged to be unfairly prejudicial is governed by Rule 403 of the Texas Rules of Criminal Evidence, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX.R.CRIM.EVID. 403. *See Long v. State*, 823 S.W.2d 259, 271–72 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Rule 403 favors the admission of relevant evidence and carries the presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim.App.1990) (opinion on reh'g). Generally, when verbal testimony describing a scene is admissible, then a photograph or videotape

of that scene would also be admissible. *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim.App.1991). The trial judge has broad discretion in admitting video recordings or photographs, and his action will not be disturbed absent an abuse of discretion. *Id.* An abuse of discretion arises only when the probative value of the videotape or photographs is small and its inflammatory potential is great. *Id.*

Here, the videotape depicted the crime scene as it was found by the police, including the position of the victim's body and the murder weapons. The photographs show the position of the stab wounds on the victim's body. Price describes the videotape and autopsy photographs as gruesome, and argues that any relevance that the tape and photographs had to a contested issue at trial was far outweighed by their prejudicial effect. We disagree. The position of the victim's body, the location of the stab wounds, and the identification of the murder weapon were all highly relevant to the State's case. Price's wife identified the yellow-handled knife shown in the video and identified the murder weapon as belonging to Price. Donald Fuller, a witness to the stabbing, testified about the position of the victim and Price, and described the struggle between them and the weapons that were used. The videotape aided the jury in visualizing the crime scene and Fuller's description of the events that occurred. The jury's assessment of the lighting in the store and the distance between Fuller and Price would be highly relevant to the weight given to Fuller's identification of Price as the murderer. The autopsy photographs aided the medical examiner in his testimony concerning the cause of death and the weapons used. Certainly, the court's decision to admit the evidence was "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. Points of error four and five are overruled.

▬▬ In his last point of error, Price complains that the trial court erred in sustaining the State's objection to defense counsel's argument in the guilt/innocence stage, as follows:

[DEFENSE COUNSEL:] The Black population in this county is not diverse throughout the county.

[PROSECUTOR]: Your Honor, I'd object that Counsel is arguing outside of the record.

THE COURT: Sustain the objection.

Price contends that this comment was proper because it is a matter of common knowledge that the black population of Tarrant County was not uniform throughout the county. However, the record does not reveal what counsel would have argued if the objection had not been sustained. Defense counsel did not object to the court's ruling, move for a mistrial, or present a bill of exception. Where the record does not fully demonstrate to the reviewing court what counsel would have argued but for an objection, no demonstration of harmful error is made. *Dean v. State,* 481 S.W.2d 903, 904 (Tex.Crim.App. 1972); *James v. State,* 660 S.W.2d 146, 148–49 (Tex.App.—Amarillo 1983, no pet.); *Barragan v. State,* 641 S.W.2d 380, 382 (Tex. App.—El Paso 1982, no pet.). Price has failed to preserve any error. Point of error six is waived.

The judgment of the trial court is affirmed.