CV5-750.DEB.DRAFT 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00750-CV







In the Matter of D. E. B.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-13,076, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







PER CURIAM



 After hearing evidence, the court determined that D.E.B., a juvenile, engaged in delinquent
conduct by committing the offense of hindering apprehension. Tex. Penal Code Ann. § 38.05 (West
1994). The court committed appellant to the Texas Youth Commission. By three points of error, appellant
contends that (1) the juvenile court erroneously denied his motion to suppress and improperly admitted as
evidence a pretrial identification; (2) a pretrial identification of appellant occurred without assistance of
counsel; and (3) the juvenile court abused its discretion when committing appellant to the Texas Youth
Commission. We will affirm the juvenile court's judgment. 



BACKGROUND


 On May 17, 1995, at the Travis County courthouse, Travis County Constable Deputy
Scott Parker was attempting to execute an arrest warrant on a suspect. The suspect told officials that he
needed to go to the bathroom. Instead of going to the bathroom, he left the courthouse. Parker went
outside to look for the suspect and found him sitting with appellant on the steps of the building's old north
entrance. The suspect was sitting on the steps with appellant. Parker approached the two and talked with
them briefly. After the suspect identified himself, Parker told the suspect that he was under arrest. As
Parker pulled out a set of handcuffs, the suspect jumped up and fled. Parker chased after him and caught
him. The two men began fighting, fell to the ground, and rolled into an empty parking space on the street. 
The suspect yelled out "Snoop Dog, come help me." Parker looked up and saw appellant standing over
him. Appellant began kicking Parker in the back of the head and back. Parker lost his grip on the suspect
who broke free and ran away with appellant. 

 The suspect was arrested later that week. He refused to name his accomplice other than
to refer to him as "Snoop Dog." Based on the information that the suspect's accomplice went by the name
Snoop Dog, a deputy obtained a photograph of appellant from police files. A week or so after the offense,
Parker reviewed a photo array that included a photo of appellant along with photos of several other black
males. Parker identified appellant as the individual who kicked him and helped the suspect escape. 

 Deputy Kevin Coutch took appellant into custody on July 26, 1995, on an unrelated
outstanding capias. Coutch was also an investigating officer for the courthouse incident. From information
he had gathered, he learned that appellant was suspected to be the accomplice. After Coutch took
appellant into custody, Coutch decided to let Parker see if appellant was the person sought. With appellant
sitting handcuffed in the back seat of his patrol car, Coutch drove a short distance to meet Parker. Parker
identified appellant as the individual who assaulted him outside the courthouse. Formal charges alleging
delinquent conduct were brought against appellant on August 23, 1995. 

 Appellant filed a motion to suppress Parker's two pre-trial identifications. After a hearing,
the court overruled the motion to suppress. Parker also identified appellant at trial.



PRETRIAL IDENTIFICATION


 By point of error one, appellant contends that the trial court erred when admitting as
evidence Parker's pretrial identification of appellant as the individual involved in the courthouse incident. 
Appellant complains about two different procedures which he claims contributed to the allegedly tainted
in-court identification: a photographic array and a one-man show-up. 

 A pretrial identification procedure may be so suggestive and conducive to mistaken
identification that subsequent use of that identification at trial would deny the accused due process of law. 
Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (citing Stovall v. Denno, 388 U.S. 293
(1967)). The United States Supreme Court formulated a two-step analysis to determine the admissibility
of an identification: 



(1) The photographic display procedure must be impermissibly suggestive; and 

(2) The suggestive procedure must give rise to a very substantial likelihood of
irreparable misidentification. 



Simmons v. United States, 390 U.S. 377 (1968); Cantu v. State, 738 S.W.2d 249, 251 (Tex. Crim.
App.), cert. denied, 484 U.S. 872 (1987). An analysis under these steps requires an examination of the
totality of the circumstances surrounding the particular case and a determination of the reliability of the
identification. Id. 

 Turning to the first prong of the analysis, suggestiveness may be created by the manner in
which the pretrial identification procedure is conducted. For example, police may not point out the suspect
or suggest that a suspect is included in a lineup or photo array. Barley, 906 S.W.2d at 33. In addition,
the content of a lineup or photo array itself may be suggestive if the suspect is the only individual meeting
the offender's description. Id. 

 Appellant contends that the photo array, from which Parker identified him, was
impermissibly suggestive because his photo was included with three or four other photographs of young
African-American men including the suspect's photograph. We disagree. 

 The photo array consisted of other young African-American men with similar
characteristics. There was no suggestion to Parker that appellant was the culprit. The array contained five
different photographs, and Parker was asked whether one of the men in the photographs was his assailant. 
Parker picked out appellant immediately. There is nothing in the record suggesting that the police ever
indicated to Parker that appellant or any suspect was included in the photographic array. Nor is there any
evidence that the police suggested that Parker select any particular photo from the array. We conclude
that the photo array was not impermissably suggestive.

 Appellant also contends that the one-man show-up two months after the initial confrontation
was improper. The show-up occurred when Parker viewed appellant who was handcuffed and sitting in
the back seat of a patrol car. 

 An identification that results from the police presenting the victim with only one suspect,
inferring that he is the culprit, and then asking the victim to identify the criminal, is dubious because of its
suggestiveness. However, under certain circumstances, a one-man show-up may not be impermissibly
suggestive and such an identification process may be sufficiently reliable. Navarette v. State, 875 S.W.2d
452, 454 (Tex. App.--Corpus Christi 1994, no writ). In this instance, Parker had previously identified
appellant in a photo array. There is nothing in the record showing that Coutch suggested to Parker that
appellant was the individual involved in the courthouse incident. Coutch sought Parker's identification for
verification purposes only after appellant refused to give his name to Coutch. When considering the
circumstances of the show-up, we conclude that it was not impermissibly suggestive. 

 Assuming that either procedure was impermissibly suggestive, we turn to the second prong
of the analysis and determine whether a very substantial likelihood for irreparable misidentification was
created. Reliability is the key in determining admissibility of identification testimony. Manson v.
Brathwaite, 432 U.S. 98 (1977); Cantu, 738 S.W.2d at 251. If indicia of reliability outweigh
suggestiveness, then an identification is admissible. Harris v. State, 827 S.W.2d 949 (Tex. Crim. App.),
cert. denied, 113 S. Ct. 381, 121 L. Ed. 2d 140 (1977). Appellant must show by clear and convincing
evidence that the identification has been irreparably tainted. Id.

 When determining whether a very substantial likelihood for irreparable misidentification has
been created, we consider several non-exclusive factors. Neil v. Biggers, 409 U.S. 188 (1972). These
factors are: (1) the witness' opportunity to view the criminal act, (2) the witness' degree of attention, (3)
the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the
time between the crime and confrontation. Barley, 906 S.W.2d at 34-35. 

 With regard to the case before us, Parker had an opportunity to view appellant before and
during the crime. The offense occurred during the middle of the day. Parker observed appellant from a
distance before approaching appellant. Parker then stood two to three feet away while conversing with
the suspect and appellant for about thirty to forty seconds. See Turner v. State, 850 S.W.2d 762, 766
(Tex. App.--El Paso 1993, pet. ref'd) (30-40 second viewing of assailant was time to assure that in-court
identification was not tainted by out-of-court procedure). Finally, Parker observed appellant while
appellant was hitting and kicking him. Parker expressed certainty that it was appellant who kicked him. 


 Parker picked out appellant from the photo array about a week or two after the incident. 
At that time Parker expressed a positive belief that appellant was the individual involved in the courthouse
incident. When Coutch took appellant to Parker for identification, Parker again confirmed his positive
belief that the individual in Coutch's patrol car was the individual who was involved in the incident at the
courthouse on May 17, 1995. Though approximately two months had passed, Parker was unwavering in
his identification of appellant.

 We conclude that appellant has failed to show that Parker's identification of appellant was
so tainted by an improper out-of-court procedure that it could not be considered reliable. We overrule
appellant's point of error one.







RIGHT TO COUNSEL


 By point of error two, appellant contends that the juvenile court improperly denied
appellant's motion to suppress and admitted evidence of an identification procedure that was conducted
without appellant's counsel present. Without citing any authority, appellant contends that, since he is
subject to the juvenile justice system, he should have been allowed to have counsel present when he was
involved in the one-man show-up. 

 A defendant does not have the right to counsel until a "critical stage" of the criminal process
is reached. A capias, or arrest warrant, does not constitute a critical stage. Price v. State, 870 S.W.2d
205, 207 (Tex. App.--Fort Worth 1994), aff'd, 887 S.W.2d 949 (Tex. Crim. App. 1995). A critical
stage is not reached until formal initiation of judicial proceedings whether by way of formal charge,
preliminary hearing, indictment, information, or arraignment. Id.; McCambridge v. State, 778 S.W.2d
70, 76 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 910 (1990). 

 When appellant was detained and taken to Parker for identification, no formal charges had
been filed against him. Under the Sixth Amendment, appellant had no right to counsel when he was
detained because no formal charges had yet been filed. Forte v. State, 707 S.W.2d 89, 92 (Tex. Crim.
App. 1986). While section 51.10 of the Texas Family Code provides a juvenile with the right to counsel,
we are unaware of any provision by which a juvenile must be given the opportunity to have an attorney
present during a pre-trial identification procedure. We overrule appellant's second point of error. 




 DISPOSITION


 By his third point of error, appellant contends that the trial court abused its discretion by
committing him to the Texas Youth Commission. Appellant contends that, since the evidence showed that
he had successfully completed the Observation and Assessment program, the trial court erred when
committing him to the Texas Youth Commission. (1) 

 Juvenile courts are granted broad discretion in determining suitable dispositions for children
who have been adjudicated to have engaged in delinquent conduct. In re J.R., 907 S.W.2d 107, 110
(Tex. App.--Austin 1995, no writ); In re R.W., 694 S.W.2d 578, 580 (Tex. App.--Corpus Christi 1985,
no writ). 

 Appellant's probation officer for more than a year, Anthony Macias, testified at the
disposition hearing. He explained that appellant had been in the Observation and Assessment program for
the past three months and had done well. Macias informed the court that appellant had been put on
probation before and had several adjudications of delinquency. In appellant's prior probations, Macias
stated that he had not done well. Despite appellant's recent success in the Observation and Assessment
program, Macias recommended to the court that it commit appellant to the Texas Youth Commission. 
Macias gave several reasons for his recommendation: appellant did well while in custody but tended not
to do well soon after release; appellant did not report to Macias as required by his probation after release;
and when out of custody, appellant was truant from school and deeply involved in gang activities and the
gang lifestyle. Additionally, appellant did not have a job. Two days after being released from the
Observation and Assessment program, appellant was detained by the police. 

 Under the evidence, we cannot say that the trial court abused its discretion by committing
appellant to the Texas Youth Commission. We overrule point of error three.



CONCLUSION


 We affirm the juvenile court's judgment. 


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: October 9, 1996

Do Not Publish
1.   Observation and Assessment is a residential program designed for behavior
modification. Its purpose is to prepare its residents to return to life in their communities.



ant contends that the juvenile court improperly denied
appellant's motion to suppress and admitted evidence of an identification procedure that was conducted
without appellant's counsel present. Without citing any authority, appellant contends that, since he is
subject to the juvenile justice system, he should have been allowed to have counsel present when he was
involved in the one-man show-up. 

 A defendant does not have the right to counsel until a "critical stage" of the criminal process
is reached. A capias, or arrest warrant, does not constitute a critical stage. Price v. State, 870 S.W.2d
205, 207 (Tex. App.--Fort Worth 1994), aff'd, 887 S.W.2d 949 (Tex. Crim. App. 1995). A critical
stage is not reached until formal initiation of judicial proceedings whether by way of formal charge,
preliminary hearing, indictment, information, or arraignment. Id.; McCambridge v. State, 778 S.W.2d
70, 76 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 910 (1990). 

 When appellant was detained and taken to Parker for identification, no formal charges had
been filed against him. Under the Sixth Amendment, appellant had no right to counsel when he was
detained because no formal charges had yet been filed. Forte v. State, 707 S.W.2d 89, 92 (Tex. Crim.
App. 1986). While section 51.10 of the Texas Family Code provides a juvenile with the right to counsel,
we are unaware of any provision by which a juvenile must be given the opportunity to have an attorney
present during a pre-trial identification procedure. We overrule appellant's second point