COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-497-CR
  
  
CORNELIUS 
RUSSELL DAVIS                                                  APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
------------
 
FROM THE 297TH 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury found Appellant Cornelius Russell Davis guilty of burglary of a habitation 
with intent to commit sexual assault, and the trial judge, after finding the 
sexual offender notice to be true, sentenced him to mandatory life 
imprisonment.  Counsel on appeal has filed an Anders brief asserting 
that there are no grounds that could be argued successfully on appeal.[2]   This court provided Appellant the opportunity 
to file a pro se brief but he did not.  Because we hold that any appeal 
from this case would be frivolous, we grant counsel’s motion to withdraw and 
affirm the trial court’s judgment.
I. 
Factual Background
        On 
September 5, 2001, Rowena Thayer (Thayer) and her fiancé, Brian Pichler 
(Pichler), were living in room 225 of the Intown Suites in North Richland Hills, 
Tarrant County, Texas.  On that day, while Pichler was at work, Thayer 
received several telephone calls from one or more unidentified males, which made 
her feel uncomfortable.  Thayer called Pichler, informed him of the 
telephone calls, and asked him to come home.  While she was on the 
telephone with Pichler, someone knocked on the door. She looked out the window 
and observed a black male that she did not know.  When she opened the door, 
the man was gone.  Thayer then asked Pichler to “come home now.”  
Pichler told her he was on his way.
        Shortly 
thereafter, the same black man knocked on the door again, and Thayer answered 
the door.  When she opened the door, the man, who appeared drunk, asked her 
for some water.  Thayer agreed to get the man some water, shut and locked 
the door behind her, and then grabbed a Coke for the man instead.  She 
opened the door and offered the man the Coke.  As Thayer tried to close the 
door behind her, the man blocked the door, pushed the door open, and entered the 
room without her permission.  Timothy McCausky, (McCausky) another resident 
at the Intown Suites, passed by and witnessed the man forcing his way into the 
room.
        After 
entering the room and locking the door behind him, the man grabbed Thayer by the 
waist and threw her on the bed.  Thayer told the man not to do anything 
because her husband was coming home.  The man told her to “shut up or 
I’ll kill you, I want your pussy.”  The man pulled Thayer’s shorts 
down and licked her genital area.  He then pulled his pants down and 
exposed his own genital area. He was about to rape her but was interrupted by 
Pichler knocking on the door and window.  The man got up, pulled his pants 
up, opened the door, and quickly left the room, passing Pichler on his way out.
        After 
the man left the room, Pichler found Thayer on the bed, dressed only in a 
t-shirt and appearing to be in shock.  Pichler asked her if she was hurt 
and what had happened, but she did not respond.  She crawled off the bed 
and curled up on the floor.  Pichler then asked her if she had been raped, 
and she said, “he tried to.”  At that time, Pichler grabbed his rifle, 
loaded it, and took off after the man, intending to kill him.
        As 
Pichler was searching the Intown Suites for the man, a North Richland Hills 
police officer on his regular patrol pulled in the parking lot. Pichler, rifle 
in hand, ran over to the officer and told him what happened.  The officer 
told Pichler to go put the rifle back in his room and called for backup.  
Shortly after backup arrived, two black men were seen walking down the second 
floor hallway and were arrested for public intoxication.  One of the men 
met the description given by Thayer and Pichler of the man who had assaulted 
Thayer.  Thayer, McCausky, and Pichler identified Appellant at the scene as 
being the black man who forced his way into the room and assaulted Thayer.
        Appellant 
was charged with burglary of a habitation with the intent to commit sexual 
assault and the enhancement paragraph of the indictment contained a sexual 
offender notice.  A jury found Appellant guilty and the trial court found 
the sexual offender notice to be true.  Appellant was then sentenced to 
mandatory life imprisonment.
II. 
The Anders Brief
        Appellant’s 
court-appointed counsel on appeal has filed a motion to withdraw.  In 
support of the motion to withdraw, counsel has filed a brief in which he states, 
in his professional opinion, this appeal has no merit.  Counsel has 
fulfilled the requirements of Anders by presenting a professional 
evaluation of the record in explaining why there are no arguable grounds for 
appeal.  Once counsel has complied with the Anders requirements, we 
must conduct an independent examination of the record to determine whether 
counsel is correct.[3]  Only then may we grant 
counsel’s motion to withdraw.[4]
III. 
Independent Review
A. Pretrial
        The 
indictment tracks the statutory language of the offense for which appellant was 
convicted.  It alleges that the offense occurred before the presentment of 
the indictment.[5]  The enhancement paragraph 
alleged in part that Appellant “was finally convicted of the felony offense of 
sexual assault of a child,” which when found to be true required a mandatory 
life sentence.[6]  Appellant filed a motion to 
quash the indictment on the ground that the enhancement paragraph was 
“vague” and “not specific” because it alleges “sexual assault of a 
child” rather than “sexual assault” or “aggravated sexual assault.”[7] The court denied the motion to quash.  Because it is 
not necessary to allege prior convictions for enhancement purposes with the same 
particularity as required for charging the offense,[8] 
by stating the nature of the offense, the style, cause number, county, and the 
court, the enhancement paragraph was sufficient to put Appellant on notice of 
the prior conviction.
        Additionally, 
the date of the prior conviction alleged in the enhancement paragraph is October 
10, 1997, and the actual date of the prior conviction was September 13, 
1995.  On September 13, 1995, Appellant was convicted of the offense of 
“sexual assault of a child” and sentenced to ten years in prison. His 
sentence was suspended, and Appellant was placed on probation for ten 
years.  On October 10, 1997, that probation was revoked by the court, and 
Appellant was sentenced to five years in prison.  Appellant did not 
complain of this variance nor did he present evidence that the variance 
surprised or prejudiced him.[9]  Thus, the 
variance was not fatal, and the information regarding the prior conviction in 
the enhancement paragraph was sufficient to put Appellant on notice.  The 
indictment conferred jurisdiction on the trial court and provided appellant with 
sufficient notice to prepare a defense.[10]
        The 
State filed a motion for continuance because it was unable to locate a material 
witness, McCausky, which the trial court granted.  The record does not 
reflect that Appellant opposed the motion because he did not file a response to 
the motion and a hearing was never held on the motion.  A timely objection, 
request, or motion with an adverse ruling is required to preserve error for 
appeal.[11]  The granting of a motion for 
continuance is within the discretion of the trial court and is not reversible 
error absent an abuse of discretion that prejudices the defendant.[12]  Because Appellant did not oppose the motion, he 
did not preserve error on the continuance for appellate review.
        Before 
the jury panel was brought in, Appellant moved to quash the jury panel on the 
basis that there was only one black venire person on a panel of forty-two 
persons.  At Appellant’s request, the trial judge took judicial notice 
that Appellant “is a member of the black race,” and that the percentage of 
blacks in the population is at least twelve percent.  The court denied the 
motion to quash.
        It 
is well settled that jurors may not be selected or excluded on the basis of 
race.[13]  It is also well settled that no 
person has the right to have the venire, or a portion of it, composed of members 
of his own race.[14]  An allegation that persons 
have been excluded from jury service solely because of race must be supported by 
evidence, and the mere absence of members of a particular race from the grand 
jury, jury venire, or petit jury does not prove purposeful discrimination.[15]  The burden was on Appellant to prove the existence 
of purposeful discrimination.[16]  Purposeful 
discrimination is not proven by merely showing that on a single jury, the number 
of members of one race is less than that race’s proportion of eligible 
individuals because defendants are not entitled to demand that members of their 
race be present on the juries before whom they are tried.[17]  
Only if Appellant provided sufficient evidence of purposeful discrimination, 
would the burden then shift to the State to rebut Appellant’s evidence.[18]
        In 
this case, the only evidence presented by Appellant in support of his motion to 
quash the jury panel was that Appellant is a member of the black race, that the 
jury venire of forty-two contained only one member of the black race, and that 
at least twelve percent of the population of Tarrant County are members of the 
black race.  Thus, Appellant established that his jury panel contained a 
smaller percentage of blacks than the general population of Tarrant 
County.  That, however, is not sufficient to establish purposeful 
discrimination.[19]
        During 
voir dire, one of the veniremembers asked the prosecutor if burglary always 
involved “the intent to do something else illegal while within the 
habitation,” something “[b]esides burglary itself.”  The prosecutor 
said no. He continued explaining, “to commit the offense of burglary you have 
to have the entry and it has to be either with intent upon entry or after 
you’ve entered the intent to commit that other portion.”  Appellant 
objected to that explanation as being a misstatement of the law as the case had 
been filed.  The trial court overruled the objection.
        Under 
Texas Penal Code section 30.02(a), there are three different ways the crime of 
burglary may be committed.[20]  Appellant’s 
indictment, however, only charged him under section 30.02(a)(1),[21] entering the habitation of Thayer without her effective 
consent and “with the intent to commit sexual assault.”  To violate 
section 30.02(a)(1), a person must have the requisite intent at the time of 
entry.[22]  Because Appellant was only charged 
under 30.02(a)(1), the State had to prove that Appellant intended to commit 
sexual assault at the time of entry rather than after he entered.  
Therefore, the prosecutor’s explanation was misleading and was a misstatement 
of the law as applied to Appellant’s case. Furthermore, the trial court erred 
by overruling Appellant’s objection.  The error, however, must be harmful 
to be reversible.[23]
        In 
determining whether a prosecutor’s misstatement of the law during voir dire 
was harmful, the court of criminal appeals has held that defense counsel’s 
ability to voir dire the venirepersons and thereby correct the misstatement,[24] the presence of a correct statement of the relevant law 
in the court’s charge,[25] and the fact that the 
misstatement concern a nonissue at the trial[26] are 
factors that show the error is harmless.  Because Appellant had the 
opportunity to voir dire the venireperson after the prosecutor’s misstatement 
and addressed the issue, the court’s charge provided a correct statement of 
the law, and Appellant’s intent at the time of entry was not an issue in 
trial, the error was not harmful and is not reversible.
        Finally, 
the trial court did not prohibit Appellant from asking the panel proper 
questions.  The trial court granted all of Appellant’s challenges for 
cause.  Thus, our review of the record reveals no reversible error occurred 
pretrial.
B. Guilt-Innocence Phase
        Viewed 
in the light most favorable to the jury’s verdict, the evidence shows that on 
September 5, 2001, Thayer was living in room 225 of the Intown Suites in North 
Richland Hills, Tarrant County, Texas.  Thayer, Pichler, and McClausky 
testified that on that day a man meeting Appellant’s description forced his 
way into Thayer’s room and attempted to sexually assault her.  Thayer 
testified that after forcing his way into her room the assailant threw her on 
the bed and told her he wanted her pussy.  He proceeded to pull down 
Thayer’s pants and lick her genital area.  After he then pulled down his 
own pants exposing his genitals, he was interrupted by Pichler’s knock on the 
door.  The assailant then fled the room.  Although some of the 
witnesses had trouble identifying Appellant in court, the police officer Pichler 
approached in the parking lot the day of the assault positively identified 
Appellant at court as the man arrested that day, and each of the witnesses 
identified Appellant at the scene.  In addition, Appellant was arrested for 
public intoxication, which corroborated Thayer’s testimony that the assailant 
appeared to be drunk.
        Thus, 
under the proper standard of review, the evidence is legally and factually 
sufficient to support the conviction for burglary of a habitation with intent to 
commit sexual assault.[27]
        Few 
objections were made at trial, and most of the objections that were made were to 
the form of the question asked by counsel or to the responsiveness of the answer 
given by the witness. One of the objections made by the State, however, resulted 
in the exclusion of certain DNA results found on the panties Thayer wore at the 
time of the sexual assault, which Appellant had had analyzed.  Appellant 
attempted to introduce evidence that sperm cells were found on the panties as 
well as both male and female skin cells because Appellant was excluded as a 
contributor of both the sperm and skin cells.  The State objected to the 
introduction of the DNA analysis evidence as irrelevant,[28] 
evidence of previous sexual conduct in a criminal case,[29] 
and specific instances of conduct of a witness.[30]   
The trial court sustained the State’s objection regarding the sperm cells and 
admonished Appellant and the witness that he did not “want anything even said 
about sperm,” but overruled the objection regarding the skin cells.
        To 
be admissible, sperm cell DNA evidence must be relevant.[31]  
Thayer, however, did not testify that the assailant ejaculated during the sexual 
assault.  In fact Thayer testified that the assailant “was in the middle 
of putting it in when Bryan knocked on the door,” and then he “got up, 
pulled his pants up” and left.  There is no other testimony that even 
implies that the assailant ejaculated during the assault.  Consequently, 
there was no reason for the trial court to believe that any sperm found on the 
panties could have belonged to the assailant.  Furthermore, Thayer’s 
previous sexual activity with other men was not a fact of consequence to the 
determination of the action and thus evidence proving or disproving that fact 
would not be relevant.[32]
        Appellant 
argued that the sperm cell evidence goes to the bias or the motive of the victim 
in this case.[33]   He based his argument 
primarily on the contention that the DNA evidence would have been admissible had 
it established that the sperm was his. First, the evidence did not reveal any 
hidden reason why Thayer would be biased against Appellant or have any motive to 
falsely accuse him. She testified that she did not know him prior to the 
incident. Secondly, the evidence is not admissible unless “its probative value 
outweighs the danger of unfair prejudice.”[34]  
In this case, there was no reason to believe the sperm had come from the 
assailant, but admitting the evidence would clearly impact Thayer’s privacy. 
Therefore, the probative value of the evidence does not outweigh the danger of 
unfair prejudice.
        Consequently, 
the trial court’s ruling on this objection as well as the rulings on the other 
objections during trial did not constitute reversible error or an abuse of 
discretion.
        As 
discussed above, the court’s charge on guilt-innocence properly defined the 
law.[35]  At closing, the State objected to this 
argument by Appellant’s counsel: “My question to you all is that will you 
base a decision to deny [Appellant] his liberty—” The State objected to 
arguing punishment during the guilt-innocence phase of the trial, and the trial 
court sustained the objection. Appellant’s counsel did not object to the 
court’s ruling or state on the record what further argument, if any, he would 
have made if the court had not sustained the State’s objection. Counsel simply 
said he would rephrase his argument and stated, “They’re asking you to 
say—to punish—to give a verdict that could potentially punish [Appellant] on 
such unreliable evidence.”
        Regardless 
of whether the trial court committed error by sustaining the State’s 
objection, no reversible error is committed where counsel fails to object or put 
on the record what he would have argued if the court had not imposed the 
limitation on his argument.[36]  Thus, in this 
case, counsel did not perfect this point for appellate review.
        Finally, 
Appellant’s counsel at trial effectively cross-examined the State’s 
witnesses and attempted to establish reasonable doubt regarding the identity of 
the assailant. We find that counsel’s performance at guilt-innocence was 
constitutionally sufficient.[37]
C. Punishment
        At 
punishment, the defense reurged its motion to quash the indictment because the 
enhancement paragraph did not reference an offense that is punishable under 
section 12.42 of the Texas Penal Code.[38]  The 
trial court denied the motion, finding the offense alleged in the indictment to 
be sexual assault under section 22.011,[39] the 
description that the sexual assault was “of a child” is surplusage, and that 
it is adequate to notify the parties of the offense. As discussed above, the 
trial court did not commit reversible error on this issue. The State presented 
evidence of the prior conviction, and Appellant raised no objections to the 
evidence.  The trial court found the sexual offender notice to be true and 
sentenced Appellant to mandatory life imprisonment in the Institutional Division 
of the Texas Department of Criminal Justice as required by section 12.42(c)(2) 
of the Texas Penal Code.[40]  Our review of the 
record reveals no reversible error from the punishment phase.
D. The Motion to Withdraw
        Because 
our independent review of the record reveals no reversible error, we agree with 
counsel’s professional determination that an appeal of this case is 
frivolous.  Accordingly, we grant counsel’s motion to withdraw.
IV. 
Conclusion
        Our 
independent review of this record compels us to agree with counsel’s 
determination that any appeal of this case would be frivolous. Therefore, we 
grant counsel’s motion to withdraw on appeal and affirm the trial court’s 
judgment.
  
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: 
April 29, 2004

 
NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
See Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967).
3. 
See Mays v. State, 904 S.W.2d 920, 923 (Tex. App.—Fort Worth 1995, no 
pet.).
4. 
See Penson v. Ohio, 488 U.S. 75, 83, 109 S. Ct. 346, 351 (1988).
5. 
See Tex. Penal Code Ann. § 30.02 (Vernon 2003).
6. 
See id. § 12.42(c)(2) (Vernon Supp. 2004).
7. 
See id. §§ 22.011, 22.021.
8. 
Cole v. State, 611 S.W.2d 79, 80 (Tex. Crim. App. 1981); Hollins v. 
State, 571 S.W.2d 873, 876 (Tex. Crim. App. 1978).
9. 
See Santana v. State, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).
10. 
See Tex. Const. art. V, § 12; Duron v. State, 
956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997).
11. 
Tex. R. App. P. 33.1(a); Thompson 
v. State, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984).
12. 
Heiselbetz v. State, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995).
13. 
Batson v. Kentucky, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716-17 (1986); Strauder 
v. West Virginia, 100 U.S. 303, 304 (1879).
14. 
Batson, 476 U.S. at 86, 106 S. Ct. at 1717.
15. 
Akins v. Texas, 325 U.S. 398, 403–04, 65 S. Ct. 1276, 1279 (1945).
16. 
Batson, 476 U.S. at 90, 106 S. Ct. at 1719.
17. 
Akins, 325 U.S. at 403, 65 S. Ct. at 1279.
18. 
Batson, 476 U.S. at 94, 106 S. Ct. at 1721.
19. 
Akins, 325 U.S. at 403, 65 S. Ct. at 1279.
20. 
Tex. Penal Code Ann. § 30.02(a); 
DeVaughn v. State, 749 S.W.2d 62, 64 (Tex. Crim. App. 1988).
21. 
Tex. Penal Code Ann. § 
30.02(a)(1).
22. 
DeVaughn, 749 S.W.2d at 65.
23. 
Tex. R. App. P. 44.2.
24. 
Penry v. State, 903 S.W.2d 715, 741 (Tex. Crim. App. 1995).
25. 
Id.; Adanandus v. State, 866 S.W.2d 210, 225 (Tex. Crim. App. 
1993).
26. 
Williams v. State, 622 S.W.2d 116, 119 (Tex. Crim. App. 1981).
27. 
See Goodman v. State, 66 S.W.3d 283, 285–86 (Tex. Crim. App. 2001); Clewis 
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).
28. 
See Tex. R. Evid. 403.
29. 
See Tex. R. Evid. 412.
30. 
See Tex. R. Evid. 608(b).
31. 
See Tex. R. Evid. 402.
32. 
See Tex. R. Evid. 401.
33. 
See Tex. R. Evid. 412(b)(2)(C).
34. 
Tex. R. Evid. 412(b)(3).
35. 
See Tex. Code Crim. Proc. Ann. art. 36.16 
(Vernon 1981).
36. 
See Ramirez v. State, 815 S.W.2d 636, 648 (Tex. Crim. App. 1991); Dean 
v. State, 481 S.W.2d 903, 904 (Tex. Crim. App. 1972); Price v. State, 
870 S.W.2d 205, 208 (Tex. App.—Fort Worth), aff’d, 887 S.W.2d 949 
(Tex. Crim. App. 1994).
37. 
See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).
38. 
See Tex. Penal Code Ann. § 12.42.
39. 
See id. § 22.011.
40. 
See id. § 12.42(c)(2).