Cornelius Russell Davis v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-497-CR

CORNELIUS RUSSELL DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury found Appellant Cornelius Russell Davis guilty of burglary of a habitation with intent to commit sexual assault, and the trial judge, after finding the sexual offender notice to be true, sentenced him to mandatory life imprisonment.  Counsel on appeal has filed an 
Anders
 brief asserting that there are no grounds that could be argued successfully on appeal.
(footnote: 2)  This court provided Appellant the opportunity to file a pro se brief but he did not.  Because we hold that any appeal from this case would be frivolous, we grant counsel’s motion to withdraw and affirm the trial court’s judgment.

I.  Factual Background

On September 5, 2001, Rowena Thayer (Thayer) and her fiancé, Brian Pichler (Pichler), were living in room 225 of the Intown Suites in North Richland Hills, Tarrant County, Texas.  On that day, while Pichler was at work, Thayer received several telephone calls from one or more unidentified males, which made her feel uncomfortable.  Thayer called Pichler, informed him of the telephone calls, and asked him to come home.  While she was on the telephone with Pichler, someone knocked on the door.  She looked out the window and observed a black male that she did not know.  When she opened the door, the man was gone.  Thayer then asked Pichler to “come home now.”  Pichler told her he was on his way.

Shortly thereafter, the same black man knocked on the door again, and Thayer answered the door.  When she opened the door, the man, who appeared drunk, asked her for some water.  Thayer agreed to get the man some water, shut and locked the door behind her, and then grabbed a Coke for the man instead.  She opened the door and offered the man the Coke.  As Thayer tried to close the door behind her, the man blocked the door, pushed the door open, and entered the room without her permission.  Timothy McCausky, (McCausky) another resident at the Intown Suites, passed by and witnessed the man forcing his way into the room.

After entering the room and locking the door behind him, the man grabbed Thayer by the waist and threw her on the bed.  Thayer told the man not to do anything because her husband was coming home.  The man told her to “shut up or I’ll kill you, I want your pussy.”  The man pulled Thayer’s shorts down and licked her genital area.  He then pulled his pants down and exposed his own genital area.  He was about to rape her but was interrupted by Pichler knocking on the door and window.  The man got up, pulled his pants up, opened the door, and quickly left the room, passing Pichler on his way out.

After the man left the room, Pichler found Thayer on the bed, dressed only in a t-shirt and appearing to be in shock.  Pichler asked her if she was hurt and what had happened, but she did not respond.  She crawled off the bed and curled up on the floor.  Pichler then asked her if she had been raped, and she said, “he tried to.”  At that time, Pichler grabbed his rifle, loaded it, and took off after the man, intending to kill him.

As Pichler was searching the Intown Suites for the man, a North Richland Hills police officer on his regular patrol pulled in the parking lot.  Pichler, rifle in hand, ran over to the officer and told him what happened.  The officer told Pichler to go put the rifle back in his room and called for backup.  Shortly after backup arrived, two black men were seen walking down the second floor hallway and were arrested for public intoxication.  One of the men met the description given by Thayer and Pichler of the man who had assaulted Thayer.  Thayer, McCausky, and Pichler identified Appellant at the scene as being the black man who forced his way into the room and assaulted Thayer.

Appellant was charged with burglary of a habitation with the intent to commit sexual assault and the enhancement paragraph of the indictment contained a sexual offender notice.  A jury found Appellant guilty and the trial court found the sexual offender notice to be true.  Appellant was then sentenced to mandatory life imprisonment.

II.  The
 Anders
 Brief

Appellant’s court-appointed counsel on appeal has filed a motion to withdraw.  In support of the motion to withdraw, counsel has filed a brief in which he states, in his professional opinion, this appeal has no merit.  Counsel has fulfilled the requirements of 
Anders
 by presenting a professional evaluation of the record in explaining why there are no arguable grounds for appeal.  Once counsel has complied with the 
Anders
 requirements, we must conduct an independent examination of the record to determine whether counsel is correct.
(footnote: 3)  
Only then may we grant counsel’s motion to withdraw.
(footnote: 4)
III.  Independent Review

A.  Pretrial

The indictment tracks the statutory language of the offense for which appellant was convicted.  It alleges that the offense occurred before the presentment of the indictment.
(footnote: 5)  
The enhancement paragraph alleged in part that Appellant “was finally convicted of the felony offense of sexual assault of a child,” which when found to be true required a mandatory life sentence.
(footnote: 6)  Appellant filed a motion to quash the indictment on the ground that the enhancement paragraph was “vague” and “not specific” because it alleges “sexual assault of a child” rather than “sexual assault” or “aggravated sexual assault.”
(footnote: 7)  The court denied the motion to quash.  Because it is not necessary to allege prior convictions for enhancement purposes with the same particularity as required for charging the offense,
(footnote: 8) by stating the nature of the offense, the style, cause number, county, and the court, the enhancement paragraph was sufficient to put Appellant on notice of the prior conviction.

Additionally, the date of the prior conviction alleged in the enhancement paragraph is October 10, 1997, and the actual date of the prior conviction was September 13, 1995.  On September 13, 1995, Appellant was convicted of the offense of “sexual assault of a child” and sentenced to ten years in prison.  His sentence was suspended, and Appellant was placed on probation for ten years.  On October 10, 1997, that probation was revoked by the court, and Appellant was sentenced to five years in prison.  Appellant did not complain of this variance nor did he present evidence that the variance surprised or prejudiced him.
(footnote: 9)  Thus, the variance was not fatal, and the information regarding the prior conviction in the enhancement paragraph was sufficient to put Appellant on notice.  The indictment conferred jurisdiction on the trial court and provided appellant with sufficient notice to prepare a defense.
(footnote: 10)
 The State filed a motion for continuance because it was unable to locate a material witness, McCausky, which the trial court granted.  The record does not reflect that Appellant opposed the motion because he did not file a response to the motion and a hearing was never held on the motion.  A timely objection, request, or motion with an adverse ruling is required to preserve error for appeal.
(footnote: 11)  The granting of a motion for continuance is within the discretion of the trial court and is not reversible error absent an abuse of discretion that prejudices the defendant.
(footnote: 12)  Because Appellant did not oppose the motion, he did not preserve error on the continuance for appellate review. 

Before the jury panel was brought in, Appellant moved to quash the jury panel on the basis that there was only one black venire person on a panel of forty-two persons.  At Appellant’s request, the trial judge took judicial notice that Appellant “is a member of the black race,” and that the percentage of blacks in the population is at least twelve percent.  The court denied the motion to quash.

It is well settled that jurors may not be selected or excluded on the basis of race.
(footnote: 13)  It is also well settled that no person has the right to have the venire, or a portion of it, composed of members of his own race.
(footnote: 14)  An allegation that persons have been excluded from jury service solely because of race must be supported by evidence, and the mere absence of members of a particular race from the grand jury, jury venire, or petit jury does not prove purposeful discrimination.
(footnote: 15)  The burden was on Appellant to prove the existence of purposeful discrimination.
(footnote: 16)  Purposeful discrimination is not proven by merely showing that on a single jury, the number of members of one race is less than that race’s proportion of eligible individuals because defendants are not entitled to demand that members of their race be present on the juries before whom they are tried.
(footnote: 17)  Only if Appellant provided sufficient evidence of purposeful discrimination, would the burden then shift to the State to rebut Appellant’s evidence.
(footnote: 18)
 In this case, the only evidence presented by Appellant in support of his motion to quash the jury panel was that Appellant is a member of the black race, that the jury venire of forty-two contained only one member of the black race, and that at least twelve percent of the population of Tarrant County are members of the black race.  Thus, Appellant established that his jury panel contained a smaller percentage of blacks than the general population of Tarrant County.  That, however, is not sufficient to establish purposeful discrimination.
(footnote: 19)
 During voir dire, one of the veniremembers asked the prosecutor if burglary always involved “the intent to do something else illegal while within the habitation,” something “[b]esides burglary itself.”  The prosecutor said no.  He continued explaining, “to commit the offense of burglary you have to have the entry and it has to be either with intent upon entry or after you’ve entered the intent to commit that other portion.”  Appellant objected to that explanation as being a misstatement of the law as the case had been filed.  The trial court overruled the objection.

Under Texas Penal Code section 30.02(a), there are three different ways the crime of burglary may be committed.
(footnote: 20)  Appellant’s indictment, however, only charged him under section 30.02(a)(1),
(footnote: 21) entering the habitation of Thayer without her effective consent and “with the intent to commit sexual assault.”  To violate section 30.02(a)(1), a person must have the requisite intent at the time of entry.
(footnote: 22)  Because Appellant was only charged under 30.02(a)(1), the State had to prove that Appellant intended to commit sexual assault at the time of entry rather than after he entered.  Therefore, the prosecutor’s explanation was misleading and was a misstatement of the law as applied to Appellant’s case.  Furthermore, the trial court erred by overruling Appellant’s objection.  The error, however, must be harmful to be reversible.
(footnote: 23)
 In determining whether a prosecutor’s misstatement of the law during voir dire was harmful, the court of criminal appeals has held that defense counsel’s ability to voir dire the venirepersons and thereby correct the misstatement,
(footnote: 24) the presence of a correct statement of the relevant law in the court’s charge,
(footnote: 25) and the fact that the misstatement concern a nonissue at the trial
(footnote: 26) are factors that show the error is harmless.  Because Appellant had the opportunity to voir dire the venireperson after the prosecutor’s misstatement and addressed the issue, the court’s charge provided a correct statement of the law, and Appellant’s intent at the time of entry was not an issue in trial, the error was not harmful and is not reversible.

Finally, the trial court did not prohibit Appellant from asking the panel proper questions.  The trial court granted all of Appellant’s challenges for cause.  Thus, our review of the record reveals no reversible error occurred pretrial.

B.  Guilt-Innocence Phase

Viewed in the light most favorable to the jury’s verdict, the evidence shows that on September 5, 2001, Thayer was 
living in room 225 of the Intown Suites in North Richland Hills, Tarrant County, Texas
.  Thayer, Pichler, and McClausky testified that on that day a man meeting Appellant’s description forced his way into Thayer’s room and attempted to sexually assault her. Thayer testified that after forcing his way into her room the assailant threw her on the bed and told her he wanted her pussy.  He proceeded to pull down Thayer’s pants and lick her genital area.  After he then pulled down his own pants exposing his genitals, he was interrupted by Pichler’s knock on the door.  The assailant then fled the room.  Although some of the witnesses had trouble identifying Appellant in court, the police officer Pichler approached in the parking lot the day of the assault positively identified Appellant at court as the man arrested that day, and each of the witnesses identified Appellant at the scene.  In addition, Appellant was arrested for public intoxication, which corroborated Thayer’s testimony that the assailant appeared to be drunk.

Thus, under the proper standard of review, the evidence is legally and factually sufficient to support the conviction for burglary of a habitation with intent to commit sexual assault.
(footnote: 27)
 Few objections were made at trial, and most of the objections that were made were to the form of the question asked by counsel or to the responsiveness of the answer given by the witness.  One of the objections made by the State, however, resulted in the exclusion of certain DNA results found on the panties Thayer wore at the time of the sexual assault, which Appellant had had analyzed.  Appellant attempted to introduce evidence that sperm cells were found on the panties as well as both male and female skin cells because Appellant was excluded as a contributor of both the sperm and skin cells.  The State objected to the introduction of the DNA analysis evidence as irrelevant,
(footnote: 28) evidence of previous sexual conduct in a criminal case,
(footnote: 29) and specific instances of conduct of a witness.
(footnote: 30)  The trial court sustained the State’s objection regarding the sperm cells and admonished Appellant and the witness that he did not “want anything even said about sperm,” but overruled the objection regarding the skin cells.

To be admissible, sperm cell DNA evidence must be relevant.
(footnote: 31)  Thayer, however, did not testify that the assailant ejaculated during the sexual assault.  In fact Thayer testified that the assailant “was in the middle of putting it in when Bryan knocked on the door,” and then he “got up, pulled his pants up” and left.  There is no other testimony that even implies that the assailant ejaculated during the assault.  Consequently, there was no reason for the trial court to believe that any sperm found on the panties could have belonged to the assailant.  Furthermore, Thayer’s previous sexual activity with other men was not a fact of consequence to the determination of the action and thus evidence proving or disproving that fact would not be relevant.
(footnote: 32)
 Appellant argued that the sperm cell evidence goes to the bias or the motive of the victim in this case.
(footnote: 33)  He based his argument primarily on the contention that the DNA evidence would have been admissible had it established that the sperm was his.  First, the evidence did not reveal any hidden reason why Thayer would be biased against Appellant or have any motive to falsely accuse him.  She testified that she did not know him prior to the incident.  Secondly, the evidence is not admissible unless “its probative value outweighs the danger of unfair prejudice.”
(footnote: 34)  In this case, there was no reason to believe the sperm had come from the assailant, but admitting the evidence would clearly impact Thayer’s privacy.  Therefore, the probative value of the evidence does not outweigh the danger of unfair prejudice.

Consequently, the trial court’s ruling on this objection as well as the rulings on the other objections during trial did not constitute reversible error or an abuse of discretion.

As discussed above, the court’s charge on guilt-innocence properly defined the law.
(footnote: 35)  At closing, the State objected to this argument by Appellant’s counsel:  “My question to you all is that will you base a decision to deny [Appellant] his liberty—”  The State objected to arguing punishment during the guilt-innocence phase of the trial, and the trial court sustained the objection.  Appellant’s counsel did not object to the court’s ruling or state on the record what further argument, if any, he would have made if the court had not sustained the State’s objection.  Counsel simply said he would rephrase his argument and stated, “They’re asking you to say—to punish—to give a verdict that could potentially punish [Appellant] on such unreliable evidence.”

Regardless of whether the trial court committed error by sustaining the State’s objection, no reversible error is committed where counsel fails to object or put on the record what he would have argued if the court had not imposed the limitation on his argument.
(footnote: 36)  Thus, in this case, counsel did not perfect this point for appellate review.

Finally, Appellant’s counsel at trial effectively cross-examined the State’s witnesses and attempted to establish reasonable doubt regarding the identity of the assailant.  We find that counsel’s performance at guilt-innocence was constitutionally sufficient.
(footnote: 37)
C.  Punishment

At punishment, the defense reurged its motion to quash the indictment because the enhancement paragraph did not reference an offense that is punishable under section 12.42 of the Texas Penal Code.
(footnote: 38)  The trial court denied the motion, finding the offense alleged in the indictment to be sexual assault under section 22.011,
(footnote: 39) the description that the sexual assault was “of a child” is surplusage, and that it is adequate to notify the parties of the offense.  As discussed above, the trial court did not commit reversible error on this issue.  The State presented evidence of the prior conviction, and Appellant raised no objections to the evidence.  The trial court found the sexual offender notice to be true and sentenced Appellant
 to mandatory life imprisonment in the Institutional Division of the Texas Department of Criminal Justice as required by section 12.42(c)(2) of the Texas Penal Code.
(footnote: 40)  Our review of the record reveals no reversible error from the punishment phase.

D.  The Motion to Withdraw

Because our independent review of the record reveals no reversible error, we agree with counsel’s professional determination that an appeal of this case is frivolous.  Accordingly, we grant counsel’s motion to withdraw.

IV.  Conclusion

Our independent review of this record compels us to agree with counsel’s determination that any appeal of this case would be frivolous.  Therefore, we grant counsel’s motion to withdraw on appeal and affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 29, 2004

FOOTNOTES
1:
See
 Tex. R. App. P.
 47.4.

2:
See
 
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).

3:
See Mays v. State
, 904 S.W.2d 920, 923 (Tex. App.—Fort Worth 1995, no pet.).

4:
See
 
Penson v. Ohio
, 488 U.S. 75, 83, 109 S. Ct. 346, 351 (1988).

5:
See
 
Tex. Penal Code Ann. 
§ 30.02 (Vernon 2003).

6:
See id
. § 12.42(c)(2) (Vernon Supp. 2004).

7:
See
 
id
. 
§§ 22.011, 22.021.

8:
Cole v. State
, 611 S.W.2d 79, 80 (Tex. Crim. App. 1981); 
Hollins v. State
, 571 S.W.2d 873, 876 (Tex. Crim. App. 1978).

9:
See Santana v. State
, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

10:
See
 Tex. Const. 
art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997).

11:
Tex. R. App. P.
 33.1(a); 
Thompson v. State
, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984).

12:
Heiselbetz v. State
, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995).

13:
Batson v. Kentucky
, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716-17 (1986)
; Strauder v. West Virginia
, 100 U.S. 303, 304 (1879)
.

14:
Batson
, 476 U.S. at 86, 106 S. Ct. at 1717.

15:
Akins v. Texas
, 325 U.S. 398, 403–04, 65 S. Ct. 1276, 1279 (1945). 

16:
Batson
, 476 U.S. at 90, 106 S. Ct. at 1719.

17:
Akins
, 325 U.S. at 403, 65 S. Ct. at 1279.

18:
Batson
, 476 U.S. at 94, 106 S. Ct. at 1721.

19:
Akins
, 325 U.S. at 403, 65 S. Ct. at 1279.

20:
Tex. Penal Code Ann.
 § 30.02(a); 
DeVaughn v. State
, 749 S.W.2d 62, 64 (Tex. Crim. App. 1988).

21:
Tex. Penal Code Ann.
 § 30.02(a)(1).

22:
DeVaughn
, 749 S.W.2d at 65.

23:
Tex. R. App. P.
 44.2.

24:
Penry v. State
, 903 S.W.2d 715, 741 (Tex. Crim. App. 1995).

25:
Id
.; 
Adanandus v. State
, 866 S.W.2d 210, 225 (Tex. Crim. App. 1993).

26:
Williams v. State
, 622 S.W.2d 116, 119 (Tex. Crim. App. 1981).

27:
See Goodman v. State
, 66 S.W.3d 283, 285–86 (Tex. Crim. App. 2001); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

28:
See
 Tex. R. Evid.
 403.

29:
See
 
Tex. R. Evid. 
412.

30:
See
 
Tex. R. Evid.
 608(b).

31:
See
 Tex. R. Evid. 
402.

32:
See
 Tex. R. Evid. 
401.

33:
See
 Tex. R. Evid. 
412(b)(2)(C).

34:
Tex. R. Evid.
 412(b)(3).

35:
See
 
Tex. Code Crim. Proc. Ann.
 art. 36.16 (Vernon 1981).

36:
See Ramirez v. State
, 815 S.W.2d 636, 648 (Tex. Crim. App. 1991); 
Dean v. State
, 481 S.W.2d 903, 904 (Tex. Crim. App. 1972); 
Price v. State
, 870 S.W.2d 205, 208 (Tex. App.—Fort Worth), 
aff’d
, 887 S.W.2d 949 (Tex. Crim. App. 1994).

37:
See Strickland v. Washington
, 466 U.S. 668, 104 S. Ct. 2052 (1984). 

38:
See 
Tex. Penal Code Ann.
 § 12.42.

39:
See
 
id
. § 22.011.

40:
See
 
id
. § 12.42(c)(2).