

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00429-CR

_____

DUSTIN MICHAEL TIDBEAUX, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR23-0251

_____

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

Appellant Dustin Michael Tidbeaux appeals his conviction for continuous sexual abuse of a young child (CSA). *See* Tex. Penal Code Ann. § 21.02(b). On appeal, Tidbeaux contends that (1) the evidence is insufficient to support his conviction, (2) the charge misstated the law by allowing the jury to convict him of CSA regardless of whether the predicate acts of abuse occurred at least thirty days apart, and (3) the trial court abused its discretion by excluding his punishment-phase witness because she violated "the Rule" during the trial's guilt–innocence phase. We will affirm.

## I. BACKGROUND

Tidbeaux began a romantic relationship with Mother[1] in 2006, and Mother became pregnant with Jane—the victim—soon afterward. Shortly after Jane was born, Mother and Tidbeaux married and purchased a home in Azle.

In 2010, when Jane was three years old, Mother and Tidbeaux separated. Following the separation, Jane lived with Mother, but she would visit Tidbeaux every other weekend and every other Monday. Mother formally divorced Tidbeaux in 2011 and moved with Jane to Oklahoma in 2012. But even after moving to Oklahoma, Mother continued to bring Jane to visit Tidbeaux every other weekend. Later in 2012, visitation temporarily stopped when Mother and Jane moved to West Virginia with

---

[1]Because the victim was a minor at the time of the offense, we refer to her by an alias and refer to her immediate family members—other than Tidbeaux—by their relationships to her. *See* Tex. R. App. P. 9.10(a)(3).

Mother's second husband, Stepfather. But the every-other-weekend visitation schedule resumed in 2015 when Mother, Jane, and Stepfather moved back to Texas.

In October 2022, when Jane was fifteen years old, she told Stepfather that Tidbeaux had sexually abused her, but she did not go into detail. Stepfather contacted the police, and an investigator arranged for Jane to be forensically interviewed at the Parker County Children's Advocacy Center.[2] During the forensic interview, Jane made an outcry of abuse and told the interviewer, Brittany Lain, that Tidbeaux had forced her to perform oral sex on him in his home's laundry room multiple times. She also told Lain that Tidbeaux had touched her vagina with his hand more than once in his bedroom. Jane stated that the abuse had started when she was approximately six years old and had not ended until she was twelve or thirteen years old and had stopped visiting Tidbeaux.

Following the forensic interview, Jane met with Investigator Nathan Vick with the Crimes Against Children Unit of the Parker County Sheriff's Office. He initiated a one-party consent call in which Jane called Tidbeaux while Investigator Vick recorded the conversation without Tidbeaux's knowledge. During the call, Jane confronted Tidbeaux about the sexual abuse, and he did not deny that it had

---

[2]The Children's Advocacy Center is a nonprofit organization that provides "a child[-]friendly environment for children, young adults, [and] teenagers to come and talk about abuse allegations."

occurred. Rather, he told Jane to tell the authorities that she had made up the abuse allegations because she was angry at him.

Ultimately, Tidbeaux was charged via indictment with CSA. He pleaded not guilty, and a jury trial was held. At trial, the State called Jane, Mother, Stepfather, Lain, and Investigator Vick as witnesses, and the recording of the one-party consent call was admitted into evidence.

Jane testified regarding the sexual abuse that Tidbeaux had committed against her. According to Jane, Tidbeaux directed her to perform oral sex on him in his laundry room "more than once." She recalled that on one occasion, he had put Life Saver gummies on his penis and had instructed her to eat them. She also described an incident in Tidbeaux's bedroom during which he removed her pants and underwear and then touched and penetrated her vagina with his fingers. She also stated that one time while she and Tidbeaux were sitting on the couch, he had reached down her pants and had touched her vagina over her underwear. According to Jane, she was likely to be abused every time that she went to visit Tidbeaux. She confirmed that Tidbeaux had abused her "for a number of years" and specifically stated that the abuse had begun before she moved to Oklahoma in 2012 (i.e., when she was approximately five or six years old) and had not ended until she stopped going to visit Tidbeaux when she was around thirteen or fourteen years old.

After considering all the evidence, the jury found Tidbeaux guilty of CSA. Following the trial's punishment phase, the jury assessed his punishment at fifty-five

4

years in prison, and the trial court sentenced him accordingly. Tidbeaux filed a motion for new trial, which the trial court denied. Tidbeaux now appeals.

## II. DISCUSSION

On appeal, Tidbeaux raises three issues. We address each of them in turn below.

## A. Sufficiency of the Evidence

In his first issue, Tidbeaux contends that the evidence is insufficient to support his CSA conviction. Specifically, he asserts that given the evidence presented at trial, a rational jury could not find beyond a reasonable doubt that Tidbeaux's acts of sexual abuse against Jane spanned a period of thirty or more days.[3] We disagree.

### 1. Standard of Review

When conducting an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw

---

[3]Because the duration of the sexual abuse is the only CSA element that Tidbeaux's evidentiary-sufficiency argument contests, we limit our discussion to that element. *See* Tex. R. App. P. 47.1; *Fernandez v. State*, No. 02-19-00014-CR, 2020 WL 579117, at *1 (Tex. App.—Fort Worth Feb. 6, 2020, no pet.) (mem. op., not designated for publication).

reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

### 2. Elements of CSA Offense

To convict Tidbeaux of CSA, the jury was required to find beyond a reasonable doubt that (1) Tidbeaux (2) at a time when he was at least seventeen years of age (3) committed a series of two or more acts of sexual abuse (4) during a period spanning thirty or more days (5) against Jane, who was younger than fourteen years of age. Tex. Penal Code Ann. § 21.02(b); *Keith v. State*, No. 02-24-00034-CR, 2024 WL 4899022, at *2 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.) (mem. op., not

6

designated for publication). "Although the exact dates of the acts of sexual abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that one act of sexual abuse occurred on at least the [twenty-ninth] day after the day of another act of sexual abuse." *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at *4 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (citing Tex. Penal Code Ann. § 21.02(d)). But "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date[s] when those acts were committed." *Id.*

### 3. Analysis

Although Tidbeaux contends that the evidence is insufficient to support the CSA offense's duration element, our review of the record shows otherwise. Jane testified that the abuse began before she moved to Oklahoma in 2012 (i.e., when she was approximately five or six years old) and did not end until she was around thirteen or fourteen years old. The record reflects that, except for the approximately two-and-a-half-year period that Mother, Stepfather, and Jane lived in West Virginia, Jane would "regularly" visit Tidbeaux every other weekend after he and Mother separated and divorced. And during her forensic interview, Jane stated that Tidbeaux abused her "almost every time" that she went to visit him. Based on this evidence, a rational factfinder could have determined that Tidbeaux sexually abused Jane numerous times

and that two of these acts of abuse occurred at least thirty days apart.[4] *See Norris v. State*, No. 02-23-00298-CR, 2024 WL 3458077, at *6 (Tex. App.—Fort Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that victim's testimony that appellant had begun sexually abusing her when she was eight years old and had continued to do so until she was approximately fifteen years old was sufficient evidence to support duration element of CSA offense); *see also Turner v. State*, Nos. 05-21-00922-CR, 05-21-00924-CR, 2023 WL 3991662, at *3 (Tex. App.—Dallas June 14, 2023, pet. ref'd) (mem. op., not designated for publication) (recognizing that "child victims are not required to be specific about the dates the abuse occurred" (citing *Montero v. State*, No. 05-18-01281-CR, 2019 WL 3229170, at *2 (Tex. App.—Dallas July 18, 2019, no pet.) (mem. op., not designated for publication))). Thus, the evidence is sufficient to support Tidbeaux's CSA conviction. *See Norris*, 2024 WL 3458077, at *6.

---

[4]Tidbeaux argues that Jane's and Lain's testimony concerning the dates and frequency of the abuse is insufficient to prove the CSA offense's duration element because Jane also testified about certain other inappropriate but non-criminal acts committed by Tidbeaux and Jane's and Lain's testimony about the duration of the abuse failed to distinguish between criminal and non-criminal acts. But Jane did not testify about any inappropriate but non-criminal touching until after she had already confirmed that Tidbeaux had abused her "for a number of years," and Lain's testimony did not address non-criminal touching at all. Further, Tidbeaux has not pointed to any specific instances in which the State or Jane used the term "abuse" to refer to an instance of inappropriate but non-criminal touching, nor has our review of the record revealed such an instance. Thus, the mere fact that Jane testified regarding certain inappropriate but non-criminal touching would not prevent the jury from reasonably inferring that she had been sexually abused as defined in the CSA statute over a number of years.

We overrule Tidbeaux's first issue.

## B. Jury Charge

In his second issue, Tidbeaux contends that the jury charge was erroneous and caused him egregious harm because it allowed the jury to convict him of CSA regardless of whether at least two of the predicate acts of sexual abuse occurred at least thirty days apart. He bases this contention on the following paragraphs of the jury charge, particularly the emphasized language:

> Our law provides a person commits the offense of Continuous Sexual Abuse of a Young Child if, *during a period that is* [*thirty*] *days or more in duration*, the person commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the person was [seventeen] years of age or older and the victim is a child younger than [fourteen] years of age.
>
> . . . .
>
> For any allegations of sexual abuse, you are instructed that the jury is not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the Defendant or the exact date when those acts were committed, if any. With respect to an allegation of Continuous Sexual Abuse of a Young Child, the jury must simply agree unanimously that the Defendant, *during a period that was* [*thirty*] *or more days in duration*, committed two or more acts of sexual abuse . . . .
>
> Now, if you find from the evidence beyond a reasonable doubt the Defendant, Dustin Michael Tidbeaux . . . on or about the 1st day of May, 2010 through on or about the 19th day of December, 2020, did then and there, *during a period that was* [*thirty*] *or more days in duration*, when the Defendant was [seventeen] years of age or older, commit two or more acts of sexual abuse against [Jane], a child younger than [fourteen] years of age . . .
>
> . . . .

> then you will find the Defendant guilty of Continuous Sexual Abuse of a Young Child as charged in the indictment. [Emphasis added.]

Although Tidbeaux acknowledges that the phrase "during a period that was [thirty] or more days in duration" tracks the language of the CSA statute, *see* Tex. Penal Code Ann. § 21.02(b)(1), he asserts that the trial court nevertheless erred by using this language in the charge because the statutory language itself is confusing. According to Tidbeaux, the plain meaning of this phrase "implies acts occurring *within* [thirty] days or more rather than [thirty] days apart." For the reasons set forth below, we conclude that even if we assume that the trial court erred by using this language, such error did not cause Tidbeaux egregious harm.

### 1. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* "Under *Almanza* [*v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)], jury charge error requires reversal when the defendant has properly objected to the charge and we find 'some harm' to his rights." *Id.* "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* at 743–44. "Thus, we

review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id.* at 744.

## 2. Analysis

Because Tidbeaux did not object to the jury charge, we apply the egregious-harm standard. *See id.* at 743–44. This standard is difficult to meet and requires a showing that the appellant was deprived of a fair and impartial trial. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (citing *Ngo*, 175 S.W.3d at 750).

In the present case, even if we were to assume that the charge's challenged language regarding the CSA's duration element was ambiguous (and therefore erroneous), the record does not show that Tidbeaux suffered egregious harm. Tidbeaux's defensive theory was that Jane had fabricated the sexual-abuse allegations—i.e., that the sexual abuse had not occurred at all—not that the abuse had occurred within a period spanning less than thirty days. Indeed, Tidbeaux never specifically mentioned the duration element during his closing argument. And, as noted, Jane testified that Tidbeaux regularly abused her "for a number of years," that the abuse began before she moved to Oklahoma when she was approximately five or six years old, and that it did not stop until she was around thirteen or fourteen years old. Thus, if the jury rejected Tidbeaux's fabrication theory and found Jane's testimony to be credible, it would necessarily conclude that the duration element had been satisfied.

Further, although Tidbeaux asserts that the State's closing argument added to the jury's confusion regarding the CSA offense's duration element, our review of the record reveals otherwise. Tidbeaux contends that the State confused the jurors by twice telling them that to convict Tidbeaux of CSA, they had to agree that two or more acts of abuse "happened over a [thirty]-day period." According to Tidbeaux, this phrasing "suggests that two or more acts [of abuse] must occur *within* [thirty] days of each other" as opposed to being separated by at least thirty days. But the State also declared that it "ha[d] to prove that two or more of these acts were committed *in over*

12

a [thirty]-day period," explained that "[a]s long as it's *over* [thirty] days, that's . . . CSA," and clarified that the jury could convict Tidbeaux of CSA if it agreed that any two acts of abuse occurred "within [the alleged time] period and *more than* [thirty] days" apart. [Emphasis added.] Thus, while the State's declaration that the jury could convict Tidbeaux of CSA if they agreed that two or more acts of abuse "happened over a [thirty]-day period" might appear confusing or ambiguous when viewed in isolation, the State's other references to the duration requirement made clear that the acts of abuse had to occur at least thirty days apart, not within thirty days of each other.[5]

Given the fact that Tidbeaux did not contest the duration element at trial, Jane's testimony regarding the timeframe of the abuse, and the totality of the State's closing arguments, we cannot conclude that the challenged language in the jury charge caused Tidbeaux egregious harm. *See Cisnerosmartinez v. State*, No. 02-24-00144-CR, 2025 WL 1840568, at *11 (Tex. App.—Fort Worth July 3, 2025, pet. filed) (mem. op.,

---

[5]Tidbeaux similarly argues that the prosecutor's repeated statement to the venire during voir dire that the law required two or more acts of sexual abuse "within a period of [thirty] days or more" to convict a defendant of CSA supports the conclusion that the complained-of charge error caused him egregious harm. But the prosecutor also asked the prospective jurors if they could consider the minimum punishment for a defendant that had committed only two acts of sexual abuse "right in that [thirty-one] days." And Tidbeaux's counsel further clarified the duration requirement during voir dire by explaining that for CSA, "[y]ou [must] have two instances of conduct [thirty] days apart from each other at least." Thus, as with the State's closing argument, while the prosecutor's use of the phrase "within a period of [thirty] days or more" might appear confusing or ambiguous when viewed in isolation, the attorneys' other statements to the prospective jurors during voir dire clarified that the acts of abuse must occur at least thirty days apart.

13

not designated for publication) (holding that jury charge's use of the phrase "during a period of time that is [thirty] days or more in duration" to describe CSA's duration element did not cause egregious harm because of "the distinct temporal details in [the victim's] testimony, the totality of the instructions in the charge, . . . the voir dire[,] and closing argument of counsel for the State"); *Stevens v. State*, No. 02-23-00122-CR, 2024 WL 3978169, at *13–15 (Tex. App.—Fort Worth Aug. 29, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding that charge authorizing jury to convict appellant of CSA "if he committed two acts of sexual abuse on any two dates *between* the dates alleged in the indictment . . . rather than [thirty] days apart from one another" did not cause egregious harm because the evidence did not describe acts of abuse that occurred within thirty days of each other, the abstract portion of the court's charge distinguished between the overarching alleged period of abuse and the temporal separation period, and counsel for the State made it clear that the distinct acts of sexual abuse had to have occurred thirty days apart); *see also Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) (holding that "while [the defendant's intent] was a part of the State's required proof, [it] was not a contested issue[,] and consequently [the defendant] could not be egregiously harmed by the definition of the intentional and knowing state of mind"); *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.—Dallas 1997, pet. ref'd) (concluding that omission from charge of element of offense did not cause egregious harm in part because element was not contested at trial).

14

We overrule Tidbeaux's second issue.

## C. Disqualification of Punishment-Phase Witness

In his third issue, Tidbeaux contends that the trial court abused its discretion by excluding his grandmother's testimony during the trial's punishment phase because she had violated "the Rule" during the guilt–innocence phase. We disagree.

### 1. Applicable Law and Standard of Review

Texas Rule of Evidence 614, commonly referred to as "the Rule," provides that at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. Tex. R. Evid. 614; *see also* Tex. Code Crim. Proc. Ann. art. 36.06 (stating that "[w]itnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court"). The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003); *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person about the case without the court's permission. *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd).

We review a trial court's decision to exclude a witness's testimony for an abuse of discretion. *Taylor v. State*, 173 S.W.3d 851, 853 (Tex. App.—Texarkana 2005, no pet.). In determining whether to disqualify a witness under the Rule, the trial court

15

must balance the interests of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Webb*, 766 S.W.2d at 244; *Tell v. State*, 908 S.W.2d 535, 541 (Tex. App.—Fort Worth 1995, no pet.). The disqualification of a defense witness must be considered in the context of the defendant's constitutional right to call witnesses on his behalf. *Longoria v. State*, 148 S.W.3d 657, 660 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd). Thus, when determining whether the trial court properly exercised its discretion by disqualifying a witness, the appellate court must determine: (1) whether there are particular circumstances, other than the mere fact that the Rule was violated, which would tend to show that the defendant or his counsel consented, procured, or otherwise had knowledge of a witness who was in violation of the Rule and (2) if no particularized circumstances existed to justify the disqualification, whether the excluded testimony is crucial to the defense. *Webb*, 766 S.W.2d at 245; *Tell*, 908 S.W.2d at 541. The appellant has the burden of establishing both prongs. *Webb*, 766 S.W.2d at 246.

### 2. Relevant Background

At the beginning of trial, Tidbeaux invoked the Rule. While Jane was testifying during the trial's guilt–innocence phase, Sheriff's Deputy Thomas Murphy saw Tidbeaux's grandmother, Julie Hall, enter the courtroom and listen to Jane's testimony for a few minutes. Deputy Murphy asked her if she was a potential witness, and she

responded that she "wasn't sure" but that she had previously talked to one of the defense attorneys. Deputy Murphy then instructed her to step out into the hallway, and she complied.

Before the State rested, it called Deputy Murphy to testify regarding Hall's presence in the courtroom during Jane's testimony. Based on Deputy Murphy's testimony, the State objected to Tidbeaux's calling Hall as a witness, and the trial court sustained the objection. Tidbeaux's counsel then stated that the defense would not call Hall as a witness "at this time." The defense did not make an offer of proof or otherwise put on the record what Hall would have testified to during the guilt–innocence phase.

During the trial's punishment phase, Tidbeaux called Hall to testify. The State again objected based on her previous violation of the Rule, and the trial court sustained the objection. Tidbeaux called Hall for record purposes, and she testified regarding the circumstances of her violation of the Rule. However, she did not describe what the substance of her punishment-phase testimony would have been.

### 3. Analysis

The State argues that Tidbeaux failed to preserve his complaint about the exclusion of Hall's testimony, and we agree. To preserve error regarding the exclusion of evidence, a party must "inform[] the court of [the offered evidence's] substance by an offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2); *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

Without a showing of what the excluded evidence would have been, nothing is presented for appellate review. *Guidry*, 9 S.W.3d at 153. Because Tidbeaux did not make an offer of proof or otherwise put on the record what the substance of Hall's punishment-phase testimony would have been, we can only speculate as to the nature of her testimony.[6] Thus, nothing is preserved for our review. *See id.*; *Duncan v. State*, No. 2-06-016-CR, 2006 WL 2507441, at *3 (Tex. App.—Fort Worth Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that appellant had failed to preserve complaint about exclusion of punishment-phase witnesses based on their violation of the Rule because he had not made an offer of proof or bill of exception showing what their testimony would have been). And even apart from the preservation issue, without any record of what Hall's testimony would have been,

---

[6]Tidbeaux argues that the substance of Hall's testimony was apparent from the context because "the evidence at trial had already established her close relationship with both [Tidbeaux] and [Jane]" and it was therefore clear that she "would be able to testify to . . . [Tidbeaux's] character and the circumstances surrounding the charged offense." *See* Tex. R. Evid. 103(a)(2). However, to obviate the need for an offer of proof, the content of the excluded evidence must be "apparent to all" such that the trial court knows what it is excluding. *See Fox v. State*, 115 S.W.3d 550, 559 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Here, although the trial court might have been able to anticipate the general topic of Hall's testimony, the specific details were unknown. Thus, the substance of Hall's testimony was not apparent from the context for error-preservation purposes. *Cf. West v. State*, No. 10-07-00100-CR, 2008 WL 5093376, at *5 (Tex. App.—Waco Dec. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that appellant had failed to preserve complaint regarding the exclusion of his roommate's testimony because he had not made an offer of proof and the excluded testimony's substance was not apparent from the context even though he had stated that the excluded testimony concerned the impeachment of other witnesses' testimony regarding the nature of a phone conversation between the appellant and the victim).

Tidbeaux cannot fulfill his burden under the second *Webb* prong to show that the excluded evidence was crucial to his defense. *See Duncan*, 2006 WL 2507441, at *3; *see also Webb*, 766 S.W.2d at 245.

We overrule Tidbeaux's third issue.

### III.  CONCLUSION

Having overruled all of Tidbeaux's issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 25, 2025